# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-2145

GLOVER NORVELL, APPELLANT,

V.

JAMES B. PEAKE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 15, 2008[1]                    Decided    July 14, 2008   )

*Ronald L. Smith*, of Washington, D.C., for the appellant.

*Kerry L. Baker*, of Washington, D.C., was on the brief for the appellant.

*Nathan Paul Kirschner*, with whom *R. Randall Campbell*, Assistant General Counsel; and *David A. Quinn*, Deputy Assistant General Counsel, were on the brief, all of Washington D.C., for the appellee.

Before GREENE, *Chief Judge*, and HAGEL and SCHOELEN, *Judges*.

HAGEL, *Judge*: Glover Norvell appeals through counsel an April 28, 2006, decision of the Board of Veterans' Appeals (Board) that denied entitlement to compensation pursuant to 38 U.S.C. § 1151 for residuals of a bilateral orchiectomy performed on February 23, 2001, based on an additional disability as a result of VA medical treatment. Because the Board's determination that Mr. Norvell's current pain was not caused by his February 2001 surgery was not clearly erroneous, and because any issue with respect to VA's duty to request quality assurance reports fails to present a current case or controversy, the Court will affirm the Board's decision.

---

[1] The Court expresses its appreciation to the faculty, staff, and students at Stetson University College of Law in Gulfport, Florida, for hosting the oral argument in this case. The Court also thanks counsel for Mr. Norvell and the Secretary for appearing in Florida for oral argument.

# I. BACKGROUND

Glover Norvell served on active duty in the U.S. Army from June 1943 to February 1946, for which he received several decorations. In February 2001, at the Lexington, Kentucky, VA Medical Center, Mr. Norvell underwent a bilateral orchiectomy[2] after being diagnosed with prostate cancer. His post-operative report reflects that he was transferred to the recovery room with no complications. A May 2001 medical progress note shows that Mr. Norvell complained of soreness in his scrotal area since the surgery. Additional medical reports also indicated that he experienced severe pain in his groin area and right leg following the surgery.

In August 2002, Mr. Norvell filed a claim for VA compensation pursuant to section 1151 for residuals of a bilateral orchiectomy. A September 2002 medical progress note again referred to Mr. Norvell's complaints of pain and noted that he was informed that his pain was likely caused by the removal of his testicles. A December 2002 medical report diagnosed Mr. Norvell with nerve damage secondary to surgery. However, a January 2003 medical opinion by William Terrence Conner, M.D., stated that the pain that Mr. Norvell experienced was likely not the result of surgery, noting that if the pain were related to surgery, it would have been at the stump of the cord in the scrotum rather than the general location described by Mr. Norvell. In a May 2003 addendum to that opinion, Dr. Conner referred to Mr. Norvell experiencing pain in the "external right ring" and opined that the pain was "probably [] from a neuroma[3] at the cut end of the cord." Record (R.) at 303. Also in May 2003, VA requested medical records relating to Mr. Norvell's surgery and treatment at the Lexington VA Medical Center, including all medical and surgical records, notes, and any "VA Form 10-2633, Report of Special Incident Involving a Beneficiary, if available." R. at 213. The letter also requested that the medical center provide any reports of investigations that may have been conducted in conjunction with this incident. In September 2003, the regional office again attempted to obtain these records, but the record on appeal does not indicate that VA was successful.

---

[2] A bilateral orchiectomy is the surgical excision of both testes. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1353 (31st ed. 2007).

[3] A neuroma is a mass or tumor growing from a nerve or made up of nerve cells or fibers. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1285 (31st ed 2007).

In April 2004, VA denied Mr. Norvell's claim. Following Mr. Norvell's filing of a Notice of Disagreement with that decision, VA sought an additional medical opinion to resolve any contradictory evidence of record. In May 2005, Dr. Conner again provided an opinion, finding no evidence of a nerve injury, but noting Mr. Norvell's complaints of pain and tenderness. Dr. Conner stated that he reviewed the claims file, including the prior opinions of himself and other doctors. In doing so, Dr. Conner restated the opinion expressed in his May 2003 addendum that if Mr. Norvell's pain was the result of his surgery, "it would be at the stump of the cord and not along the course of the entire genitofemoral nerve." R. at 502. Dr. Conner also determined that Mr. Norvell's right genitofemoral neuropathy was "less likely as not the result of the bilateral simple orchiectomy." *Id*. Following the continued denial of his claim, Mr. Norvell appealed to the Board. In his brief before the Board, submitted in April 2006, Mr. Norvell stated that there was no indication that the Lexington VA Medical Center had been asked to provide quality assurance records. He also stated that any instructions to VA adjudicators to withhold these records should be invalidated as inconsistent with 38 U.S.C. §§ 5103A and 5705.

In April 2006, the Board issued the decision on appeal, denying entitlement to VA benefits under section 1151. The Board found no competent evidence that Mr. Norvell's current groin and right leg pain was the result of any treatment that he had received at a VA medical center. In reaching this determination, the Board found that Dr. Conner's May 2005 VA medical opinion was the most probative evidence of record. The Board further stated that Mr. Norvell did not identify any evidence not of record that should have been obtained. The Board acknowledged Mr. Norvell's argument regarding quality assurance records, but found that the evidence did not show that such records existed. The Board further stated that, even if the records existed, their probative value would be outweighed by the May 2005 VA medical opinion.

## II. CONTENTIONS ON APPEAL

On appeal, Mr. Norvell argues that the Board's determination that there is no medical nexus between his current pain and his surgery is clearly erroneous because the evidence establishes that his current pain is the direct result of his surgery. In particular, he asserts that the Board's reliance on Dr. Conner's May 2005 opinion, as being based on a "longitudinal review" of the record, was

clearly erroneous because that opinion is merely a restatement of Dr. Conner's prior January 2003 opinion. Appellant's Brief (Br.) at 11. He also argues that Dr. Conner's January and May 2003 medical opinions are contradictory. Next, Mr. Norvell argues that the Secretary failed to fulfill his duty to assist under 38 U.S.C. § 5103A by not obtaining medical quality assurance reports. He also argues that the Board's finding that the probative value of these documents, if obtained, would be outweighed by the May 2005 medical opinion is speculative and, therefore, clearly erroneous.

The Secretary argues that the Board carefully reviewed all of the evidence of record, including all of the treatment and progress notes as well as the VA medical opinions, and was not clearly erroneous in finding that the evidence did not show that Mr. Norvell's claimed disability was caused by his bilateral orchiectomy. The Secretary contends that Mr. Norvell's argument regarding the probative value assigned to Dr. Conner's May 2005 medical opinion is merely a disagreement with how the Board weighed the evidence and does not arise to the level of being clearly erroneous. With respect to the VA quality assurance records, the Secretary asserts, as the Board found, that there is no evidence that such records were ever created regarding Mr. Norvell's surgery. He also asserts that, assuming arguendo that the records were created, it is VA's established policy to destroy any such records after three years. Mr. Norvell requested that VA obtain medical quality assurance reports related to his 2001 surgery for the first time in 2006. The Secretary also argues that he did not have a duty to obtain quality assurance records because they are confidential and privileged under 38 U.S.C. § 5705(a). He argues that VA's duty to assist under section 5103A is preempted by the confidentiality requirements of section 5705(a). Finally, the Secretary states that the Board's rationale regarding the relative weight of quality assurance records, although questionable, has not been shown to be prejudicial.

In reply, Mr. Norvell argues that the Board's determination regarding the relative weight of medical quality assurance reports is clearly erroneous and prejudicial to his claim. He further argues that this finding of fact is "inextricably intertwined" with the Board's denial of benefits. Appellant's Reply Br. at 2. He also argues that 38 U.S.C. § 5705(b) creates an exception to the confidentiality of quality assurance records, which would permit VA to obtain the quality assurance reports associated with his surgery.

4

At oral argument, Mr. Norvell raised a new issue before the Court.  He argued, for the first time, that his claim should be remanded to VA with an instruction to provide him with a VA medical examination to determine whether his current neuroma is the result of his February 2001 surgery.

### III.  ANALYSIS

#### A.  Entitlement to VA Benefits under 38 U.S.C. § 1151

Pursuant to 38 U.S.C. § 1151, veterans who were injured by VA care or medical treatment may be entitled to compensation.  *See Jackson v. Nicholson,* 433 F.3d 822, 824 (Fed. Cir. 2005).  Section 1151 provides that compensation shall be awarded for an additional disability or death "in the same manner as if such additional disability or death were service-connected" if the additional disability or death was not the result of the veteran's willful misconduct and:

> (1) the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary . . . and the proximate cause of the disability or death was–
>> (A) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or
>> (B) an event not reasonably foreseeable.

38 U.S.C. § 1151(a).   To be entitled to VA benefits, any additional disability must not be merely coincidental with VA medical treatment, but must stem from some fault in the care that was provided, including "carelessness, negligence, lack of proper skill, error in judgment, or some other similar instance of fault."  38 U.S.C. § 1151(a); 38 C.F.R. § 3.361(d)(1) (2008); *see Loving v. Nicholson*, 19 Vet.App. 96, 100 (2005).

In this case, the Board reviewed the evidence of record and specifically referred to Dr. Conner's May 2005 medical opinion, including his statement in that opinion from a prior medical opinion that if Mr. Norvell's pain was the result of his February 2001 surgery, the pain would be "at the stump of the cord," not along the entire genitofemoral nerve.  R. at 6-7, 502.  The Board also relied on Dr. Conner's opinion that Mr. Norvell's "right genitofemoral neuropathy was less likely than not caused by the bilateral simple orchiectomy."  R. at 7, 501.  The Board acknowledged that prior medical evidence was equivocal, but found that Dr. Conner's opinion, which it stated was based on a "longitudinal review" of the record, was unequivocal in finding that Mr. Norvell's current pain

and his February 2001 surgery were "less likely than not" related. R. at 7. The Board found that the favorable medical opinions of record were not based on such a review of the evidence and, as a result, accorded less probative value to those opinions.

Mr. Norvell argues that the Board erred in relying on Dr. Conner's May 2005 opinion because that opinion is not based on a true longitudinal review of the record, but is merely a restatement of a prior opinion. In rendering its decision, the Board is permitted to favor one opinion over another provided that it gives an adequate statement of its reasons and bases for doing so. *See Simon v. Derwinski*, 2 Vet.App. 621, 623 (1992). The Board's assessment of the credibility and weight to be given to evidence is a finding of fact that the Court reviews under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990).

Here, the Board provided a detailed statement of its reasons for relying on Dr. Conner's May 2005 opinion and rejecting the other evidence of record. As noted by the Board, the May 2005 opinion was based on a review of the prior evidence of record, including Dr. Conner's prior opinions. In referring to Dr. Conner's statement regarding the location of the pain, the Board did not expressly note that Dr. Conner was referencing his prior medical opinion. However, the Board's finding that Mr. Norvell's current pain is not related to the February 2001 surgery is based on Dr. Conner's opinion that Mr. Norvell's "right genitofemoral neuropathy was less likely than not caused by the bilateral simple orchiectomy." R. at 7, 501. Giving appropriate deference to the Board's determination, the Court does not find the Board's decision to be clearly erroneous. *See Gilbert*, 1 Vet.App. at 52; *see also Washington v. Nicholson*, 19 Vet.App. 362 (2005) (holding that it is the Board's responsibility to determine the appropriate weight to be given to evidence).

Finally, Mr. Norvell argues that Dr. Conner's May 2003 and 2005 opinions regarding the location of the pain are contradictory because the May 2003 opinion refers to pain "at the end of the cord being caused by neuroma," where the May 2005 opinion refers to Dr. Conner's January 2003 findings that Mr. Norvell's pain was throughout the entire genitofemoral nerve and not just at "the stump of the cord." *See* R. at 303-04, 307, 502. Based on a review of these opinions, the Court is not convinced that there is a contradiction. However, assuming that the January and May 2003 medical opinions did contradict each other, the May 2005 opinion, which was requested by VA to

resolve the issue, is the opinion on which the Board relied and is definitive in its conclusion that Mr. Norvell's current pain "was less likely than not caused by the bilateral simple orchiectomy." R. at 502. For the reasons discussed above, the Court finds that the Board was not clearly erroneous in affording more probative value to Dr. Conner's May 2005 opinion and provided a detailed explanation of its reasons and bases for doing so. *See Gilbert*, *supra*.

## B. Duty to Assist

Pursuant to section 5103A of title 38, U.S. Code, as added by the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, the Secretary is required to "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit." 38 U.S.C. § 5103A(a). Under section 5103A(b), the Secretary's duty to assist includes making reasonable efforts to obtain relevant records, so long as the claimant adequately identifies those records to the Secretary and authorizes the Secretary to obtain them. 38 U.S.C. § 5103A(b)(1). Pursuant to 38 U.S.C. § 5103A(c)(1), VA is required to make reasonable efforts to obtain all records held by a governmental entity that are relevant to the claim and that pertain to the claimant's military service if the claimant provides the Secretary information sufficient to locate such records. Under 38 C.F.R. § 3.159(c)(2) (2008), VA is required to make as many requests as necessary to obtain records from Federal agencies. VA may discontinue its efforts to obtain records from a Federal department or agency only when it concludes that continued efforts would be futile, which requires that the Federal department or agency advise VA that either the requested documents do not exist or that the custodian does not have them. 38 C.F.R. § 3.159(c)(2). The statute imposes specific notice duties on the Secretary when he determines that he has been unable to obtain such records. That notice must (1) identify the records VA was unable to obtain; (2) explain the efforts VA made to obtain those documents; and (3) describe any further action VA will take with respect to the claim. 38 U.S.C. § 5103A(b)(2).

Mr. Norvell argues that, because VA failed to obtain medical quality assurance reports related to his February 2001 surgery, the Board erred in finding that VA fulfilled its duty to assist. The Secretary asserts that quality assurance reports are confidential, and thus, VA was prohibited from obtaining them under 38 U.S.C. § 5705(a). The Secretary also argues that there is no evidence that quality assurance reports related to Mr. Norvell's surgery ever existed and that, if they had existed,

7

they would have been destroyed after three years pursuant to VA policy. *See* Secretary's Br. at 8-10; *see also* VHA Records Control Schedule 10-1, February 14, 2002, at XXXIII-1, XXXIII-2.

At oral argument, counsel for the Secretary for the first time indicated that he had inquired as to the existence of medical quality assurance records related to Mr. Norvell's treatment and had been informed that no such records currently exist. Following oral argument, the Court ordered the Secretary to inform the Court, with supporting evidence, whether quality assurance records related to Mr. Norvell's surgery currently exist or ever existed and, if such records existed at one time, but no longer exist, the date that the records were destroyed. On April 3, 2008, the Secretary filed a response with supporting affidavits, asserting that, although it is impossible to know whether medical quality assurance reports ever existed, those records do not currently exist. Mr. Norvell filed a response to the Secretary's filing, asserting that the Court was not permitted to consider the Secretary's filing, including affidavits, in rendering its decision.

Even assuming that medical quality assurance reports existed at one time, based on the argument presented in the Secretary's brief regarding VA's standard policy of destroying medical quality assurance reports after three years, the Secretary's April 2008 response to this Court's order with affidavits supporting VA's contention that the documents do not currently exist, and the lack of any evidence that medical quality assurance reports exist now or of any allegation of VA misconduct in their destruction, the Court finds that any pronouncement on whether the Board erred in failing to require VA to obtain those records would constitute a prohibited advisory opinion. The prohibition against advisory opinions is based on the "case or controversy" doctrine to which this Court adheres. *See Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990). "Under this doctrine, federal courts are to decide only 'actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it.'" *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960)). This Court has repeatedly held that it will not engage in the practice of rendering advisory opinions. *See*, *e.g.*, *Waterhouse v. Principi,* 3 Vet.App. 473, 474-76 (1992); *see also Haines v. Gober*, 10 Vet.App. 446, 446-47 (1997) (quoting *Landicho v. Brown*, 7 Vet.App. 42, 49 (1994)). As held in *Waterhouse*, to satisfy the case or

controversy requirement, a "court must have the ability to resolve the conflict through the specific relief it provides." 3 Vet.App. at 474. Absent the ability to redress an injury through a favorable decision, any act by the Court would be "gratuitous." *Id.* at 475. (citing *Simon v. Eastern Kentucky*, 426 U.S. 26, 38 (1976)).

Contrary to Mr. Norvell's argument, the Court is not prohibited from considering the current facts affecting jurisdiction, as provided by the Secretary's arguments and supporting affidavits regarding the existence of the medical quality assurance reports. Indeed, the Court has previously engaged in fact finding to assess its own jurisdiction. *See, e.g., McCreary v. Nicholson*, 19 Vet.App. 324 (2005) (reviewing new facts to determine whether equitable tolling was appropriate); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.") (citing *Turner v. City of Memphis*, 369 U.S. 350 (1962)); *Arnesen v. Principi*, 300 F.3d 1353, 1359 (Fed. Cir. 2002) . The Court's jurisdictional case or controversy requirement must be present at the commencement of the appeal and must continue throughout the appeal. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980); *see also Mokal*, 1 Vet.App. at13; *Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (holding that *once a live case or controversy becomes moot, the Court lacks jurisdiction* (emphasis added)); *Fugere v. Derwinski*, 972 F.2d 331, 334, n. 5 (Fed. Cir. 1992) (holding that challenges to a court's jurisdiction may be raised at any time); *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) (holding that once an issue regarding the presence of a case or controversy arises, it must be adjudicated). Despite Mr. Norvell's request, we cannot simply ignore the Secretary's statements and address the issue of VA's duty to obtain medical quality assurance reports when those reports do not exist in this case.

Because quality assurance records related to Mr. Norvell's February 2001 surgery do not exist, any opinion by this Court regarding VA's obligation to obtain those records would not affect Mr. Norvell. Such an action would constitute an impermissible advisory opinion. *See Teva Pharm*., 482 F.3d at 1337-38; *see also Waterhouse*, 3 Vet.App. at 474. Consequently, without any existing records, there is currently no controversy regarding their production, and therefore Mr. Norvell's argument regarding VA's duty to obtain quality assurance records will not be addressed. *See Mokal*, 1Vet.App. at 13.

9

C. Issues Raised at Oral Argument

At oral argument, Mr. Norvell's counsel raised a new issue not previously presented to the Court in his brief or in a motion. He argued that the matter should be remanded for VA to obtain a medical opinion as to whether his current neuroma resulted from his February 2001 surgery. In so arguing, he acknowledged that he had not previously raised the issue of entitlement to a VA medical examination. However, he requested that the Court consider his argument.

This Court and the U.S. Court of Appeals for the Federal Circuit have repeatedly discouraged parties from raising arguments that were not presented in an initial brief to the Court. *See Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("improper or late presentation of an issue or argument . . . ordinarily should not be considered"), *aff'g sub nom. Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review argument first raised in appellant's reply brief); *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation."); *Tubianosa v. Derwinski*, 3 Vet.App. 181, 184 (1992) (holding that a party "should have developed and presented *all* of his arguments in his initial pleading"); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997) (holding that a party waived an argument by not presenting it in its opening brief). Further, we find that the practice of presenting new issues and arguments during oral argument is even more objectionable. *See, e.g., Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1332-33 (Fed. Cir. 2001) (finding that "[i]t is well settled that an appellant is not permitted to make new arguments that it did not make in its opening brief" and not addressing arguments presented for the first time at oral argument); *Tarpley v. Greene*, 684 F.2d 1, 7 n.17 (D.C. Cir. 1982) ("Clearly, oral argument on appeal is not the proper time to advance new arguments or legal theories."); *McFarlin v. Conseco Servs., L.L.C.*, 381 F.3d 1251, 1263 (11th Cir. 2004) ("A party is not allowed to raise at oral argument a new issue for review."). Accordingly, Mr. Norvell's argument regarding entitlement to a VA medical examination, raised for the first time at oral argument, will not be further addressed.

## IV. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the April 28, 2006, Board decision is AFFIRMED.