Opinion dissenting in part and concurring in the judgment filed by Circuit Judge DYK. O’MALLEY, Circuit Judge. Robert H. Gray (“Gray”) and Blue Water Navy Vietnam Veterans Association (“Blue Water”) (collectively, “Petitioners”) petition this court under 38 U.S.C. § 502 to review certain revisions the Department of Veterans Affairs (“VA”) made to its Adjudication Procedures Manual M21-1 (“M21-1 Manual”) in February 2016. These revisions pertain to the VA’s interpretation of provisions of the Agent Orange Act of 1991 (the “Agent Orange Act”), Pub. L. No. 102-4, 105 Stat. 11, codified as amended at 38 U.S.C. § 1116, as implemented via regulations at 38 C.F.R. §§ 3.307(a)(6), 3.309(e). Because the VA’s revisions are not agency actions reviewable under § 502, we dismiss for lack of jurisdiction. I. Background A. The Agent Orange Act To receive disability compensation based on service, a veteran must demonstrate that his or her disability was service-connected, meaning that it was “incurred or aggravated ... in line of duty in the active military, naval, or air service.” 38 U.S.C. § 101(16). Establishing service connection generally requires three elements: “‘(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service’—the so-called ‘nexus’ requirement.” Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). The claimant has the responsibility to support a claim for service connection. 38 U.S.C. § 5107(a). Congress has enacted presumptive service connection laws to protect certain veterans who faced exposure to chemical toxins during service, but would find it difficult or impossible to satisfy the obligation to prove a “nexus” between their exposure to toxins and their disease or injury. Among these laws is the Agent Orange Act, which established a framework for the adjudication of disability compensation claims for Vietnam War veterans with diseases medically linked to herbicide exposure in the Republic of Vietnam during the Vietnam War. Under the Agent Orange Act, any veteran who “served in the Republic of Vietnam” during the Vietnam era and who suffers from any of certain designated diseases “shall be presumed to have been exposed during such service” to herbicides “unless there is affirmative evidence to establish that the veteran was not exposed.” Id. § 1116(f). The Agent Orange Act also established several statutory presumptions and a methodology for the VA to create additional regulatory presumptions that certain diseases were “incurred in or aggravated by” a veteran’s service in Vietnam. Id. § 1116(a). The VA then proceeded to determine which diseases would qualify for presumptive service connection and to define what service “in the Republic of Vietnam” encompasses. In May 1993, the VA issued regulations establishing presumptive service connection for certain diseases associated with exposure to herbicides in Vietnam. The relevant regulation conditions application of the presumption on the claimant having “served in the Republic of Vietnam,” including “service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam.” 38 C.F.R. § 3.307(a)(6)(iii) (1993) (emphasis added); see Diseases Associated with Service in the Republic of Vietnam, 58 Fed. Reg. 29,107, 29,109 (May 19, 1993). Absent on-land service, the VA concluded that the statute and regulation do not authorize presumptive service connection for those veterans serving in the open waters surrounding Vietnam—known as “Blue Water” veterans. We considered the VA’s position in Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008), and concluded that it was neither an unreasonable interpretation of the congres-sionally mandated presumption nor of the VA’s own regulations relating thereto. Id. at 1190-95. The dispute now before us arises from the VA’s decision not just to exclude open water service from the definition of service in the “Republic of Vietnam,” but to also exclude those veterans who served in bays, harbors, and ports of Vietnam from presumptive service connection. In other words, absent documented service on the land mass of Vietnam or in its “inland waterways”—defined as rivers and streams ending at the mouth of the river or stream, and excluding any larger bodies of water into which those inland waters flow—the VA has concluded that no presumptive service connection is to be applied. The VA did not implement this additional restriction by way of notice and comment regulation as it did its open waters restriction, and it has not published its view on this issue in the Federal Register. Instead, the VA has incorporated this new restriction into the M21-1 Manual, which directs VA adjudicators regarding the proper handling of disability claims from Vietnam-era veterans. It is this Manual revision which Gray challenges and asks us to declare invalid. B. The M21-1 Manual and the 2016 Revision As we explained recently, “[t]he VA consolidates its [internal] policy and procedures into one resource known as the M21-1 Manual.” Disabled Am. Veterans v. Sec’y of Veterans Affairs, 859 F.3d 1072, 1074 (Fed. Cir. 2017) (“DAV”). The M21-1 Manual “is an internal manual used to convey guidance to VA adjudicators.” VA Adjudications Manual, M21-1; Rescission of Manual M21-1 Provisions Related To Exposure to Herbicides Based on Receipt of the Vietnam Service Medal, 72 Fed. Reg. 66,218, 66,219 (Nov. 27, 2007) [hereinafter 2007 M21-1 Manual Revisions]. “The M21-1 Manual provides guidance to Veterans Benefits Administration (‘VBA’) employees and stakeholders to allow the VBA to process claims benefits quicker and with higher accuracy.” DAV, 859 F.3d at 1074 (internal quotation marks omitted). The M21-1 Manual is available to the public through the KnowVA website. See http:// www.knowva.ebenefits.va.gov/system/ templates/selfservice/va_ss/#!portal/ 554400000001018/topic/554400000004049/M 21-1-Adjudication-Procedures-Manual. The M21-1 Manual provisions are not binding on anyone other than the VBA employees, however; notably; the Board of Veterans’ Appeals (“Board”) is not bound by any directives in the M21-1 Manual and need not defer to any administrator’s adherence to those guidelines. See 38 C.F.R. § 19.5. In 2007, Gray filed a claim for disability compensation for a number of medical conditions allegedly arising but of his naval service in Da Nang Harbor. Gray v. McDonald, 27 Vet.App. 313, 316 (2015). At the time, the M21-1 Manual defined “service in the Republic of Vietnam (RVN)” as “service in the' RVN or its inland waterways.” M21-1 Manual, part IV, ch. 1, ¶ H.28.a (2005). In a February 2009 letter, the VA further explained that it interpreted “inland waterways” to mean “rivers, estuaries, canals, and delta areas inside the country, but ... not ... open deep-water coastal ports and harbors where there is no evidence of herbicide use.” Gray, 27 Vet.App. at 321-22 (alterations in original) (quoting Letter from the Director of VA C & P Service, February 2009, and December 2008 C & P Service Bulletin). After the VA denied Gray’s claim under this interpretation, he appealed to the U.S. Court of Appeals for Veterans Claims (“the Veterans Court”). Id. at 318. The Veterans Court concluded that the VA’s definition of “inland waterway” was “both inconsistent with the regulatory purpose and irrational,” in part because the VA had offered no meaningful explanation for why it classified some bays as inland waterways but not others. Id. at 322-25. The Veterans Court remanded the matter to the VA with instructions to reevaluate its definition of “inland waterway” to be consistent with § 3.307(a)(6)(iii). Id. at 326-27. Following the remand, the VA surveyed the available scientific evidence, including documents submitted in July 2015 by counsel for Blue Water, an organization representing a number of Blue Water veterans. In a draft document it issued on January 15, 2016, the VA acknowledged that it had failed to “clearly explain the basis” for its previous classifications. J.A. 203. The VA concluded that, because “Agent Orange was not sprayed over Vietnam’s offshore waters,” the VA did “not have medical or scientific evidence to support a presumption of exposure for service on the offshore open waters,” which it defined as “the high seas and any coastal or other water feature, such as a bay, inlet, or harbor, containing salty or brackish water and subject to regular tidal influence.” J.A. 203-04. Accordingly, in February 2016, the VA published a “Memorandum of Changes” announcing a change in policy and an accompanying revision of the M21-1 Manual. J.A. 207. The revised M21-1 Manual defines “inland waterways” as follows: Inland waterways are fresh water rivers, streams, and canals, and similar waterways. • Because these waterways are distinct from ocean waters and related coastal features, service in these waterways is service in the [Republic of Vietnam], VA considers inland waterways to end at their mouth or junction to other offshore water features, as described below. For rivers and other waterways ending on the coastline, the end of the inland waterway will be determined by drawing straight lines across the opening in the landmass leading to the open ocean or other offshore feature, such as a bay or inlet. For the Mekong[1] and other rivers with prominent deltas, the end of the inland waterways will be determined by drawing a line across each opening in the landmass leading to the open ocean. Note: Inland waterway service is also referred to as brown-water Navy service. M21-1 Manual, part IV, subpart ii, ch. 1, ¶ H.2.a (2016) (emphasis in original). By virtue of this manual change, the VA instructed all claims processors in its 56 regional offices to exclude all Navy personnel who served outside the now-defined “inland waterways” of Vietnam—i.e., in its ports, harbors, and open waters—from presumptive service connection for diseases or illnesses connected with exposure to Agent Orange. Thus, the VA instructed its adjudicators to exclude all service in ports, harbors, and bays from presumptive service connection, rather than service in only some of those waterways. Petitioners seek review of this revision pursuant to 38 U.S.C. § 502. II. Discussion “A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists.” DAV, 859 F.3d at 1075 (quoting Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991)). Under 38 U.S.C. § 502, we have jurisdiction to review only those agency actions that are subject to 5 U.S.C. §§ 552(a)(1) and 553. We do not have jurisdiction to review actions that fall under § 552(a)(2). “Section 553 refers to agency rulemaking that must comply with notice- and-comment procedures under the Administrative Procedure Act.” DAV, 859 F.3d at 1075. The parties agree that § 553 is not at issue in this proceeding. The parties instead focus on § 552; their debate is whether the manual provisions challenged in this action fall under § 552(a)(1), giving us authority to consider them in the context of this ' action, or § 552(a)(2), prohibiting our review here. In relevant part, § 552(a)(1) provides: Each agency shall separately state and currently publish in the Federal Register for the guidance of the public— [[Image here]] (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and (E) each amendment, revision, or repeal of the foregoing. § 552(a)(2) provides that: ■ Each agency, in accordance with published rules, shall make available for public inspection in an electronic format— [[Image here]] (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; [and] (C) administrative staff manuals and instructions to staff that affect a member of the public; [[Image here]] The government contends that, because M21-1 Manual provisions are expressly governed by § 552(a)(2), this court may not review them unless and until they are applied in and govern the resolution of an individual action. This is so, according to the government, regardless of how interpretive or policy-laden the judgments are that resulted in the formulation of those manual provisions. Gray contends that the government’s view of § 552 is too myopic. He contends that a manual provision can fall under § 552(a)(1) where, regardless of its designation, it constitutes an interpretive rule of general applicability that adversely affects the rights of an entire class of Vietnam veterans. In other words, Gray contends that it is not the way in which the VA chooses “to implement its policies and statutory interpretations that implicates our jurisdiction, it is the impact of what the VA is doing that matters. While Gray’s points are not without force—and the VA even concedes that the impact of jts manual changes is both real and far reaching— we conclude that we may not review Gray’s challenge in the context of this action. We recently considered a challenge under § 502 to another revision to the M21-1 Manual. DAV, 859 F.3d at 1074-75. The Manual revision at issue in DAV provided guidance regarding the term “medically unexplained chronic multisymptom illness,” which appeared in a statute and regulation related to presumptive service connection for Persian Gulf War veterans. Id. (citing 88 U.S.C. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2)(ii)). In determining whether § 502 granted this court jurisdiction to consider a direct challenge to the Manual revision, we identified “three relevant factors to whether an agency action constitutes substantive rulemaking under the APA: ‘(1) the [ajgenc/s own characterization of the action; (2) whether the action was published in the Federal Register or the Code of Federal Regulations; and (3) whether the action has binding effects on private parties or on the agency.’ ” Id. at 1077 (alteration in original) (quoting Molycorp, Inc. v. EPA, 197 F.3d 543, 545 (D.C. Cir. 1999)). We noted that “the ultimate focus of the inquiry is whether the agency action partakes of the fundamental characteristic of a regulation, i.e., that it has the force of law.” Id. (quoting Molycorp, 197 F.3d at 545). Applying these factors, we found that the challenged Manual revisions “d[id] not amount to a § 553 rulemaking and d[id] not carry the force of law.” Id. We then held that the revisions “clearly f[e]ll under” § 552(a)(2) and not § 552(a)(1). Id. at 1078. We explained that “[wjhere, as here, manual provisions are interpretations adopted by the agency, not published in the Federal Register, not binding on the Board itself, and contained within an administrative staff manual, they fall within § 552(a)(2)—not § 552(a)(1).” Id. We concluded that this was so, regardless of the extent to which the manual provision might be considered interpretive or a statement of policy. Id. On these grounds, we dismissed the challenge for lack of jurisdiction. Id. Our holding in DAV compels the same result here. Like that in DAV, the manual provision at issue here is an interpretation adopted by the agency; the M21-1 Manual “convey[s] guidance to VA adjudicators,” but “[i]t is not intended to establish substantive rules.” 2007 M21-1 Manual Revisions, 72 Fed. Reg. at 66,219. The revisions at issue were not published in the Federal Register or the Code of Federal Regulations. The Board remains “bound only by ‘regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department’”—and not the M21-1 Manual. DAV, 859 F.3d at 1077 (quoting 38 U.S.C. § 7104(c)). And, of course, the provisions in question are contained within an administrative staff manual: the M21-1 Manual. 'While it is admittedly true that compliance with this Manual revision by all internal VA adjudicators will affect the concerned veterans, at least initially, it also remains true that the Board is not bound to accept adjudications premised on that compliance. As we found in DAV, where the action is not binding on private parties or the agency itself, wé have no jurisdiction to review it. To be clear, it is not the moniker applied to this VA policy statement that is controlling. There are circumstances where we have found agency actions reviewable under § 552(a)(1) precisely because they had a binding effect on parties or entities other than internal VA adjudicators. See, e.g., Lefevre v. Sec’y, Dep’t of Veterans Affairs, 66 F.3d 1191, 1196-98 (Fed. Cir. 1995). We addressed several of those cases in DAV and explained why they differed from the circumstances at issue there. 859 F.3d at 1075-77. While the Manual provisions here differ from those at issue in DAV, their scope and binding effect are identical. We, accordingly, must reach the same conclusion regarding the scope of our jurisdiction here as we did in DAV. As we also explained in DAV, this disposition does not leave Petitioners without recourse. For example, “[a] veteran adversely affected by a M21-1 Manual provision can contest the validity of that provision as applied to the facts of. his case under 38 U.S.C. § 7292.” DAV, 859 F.3d at 1078; see, e.g., Haas, 525 F.3d at 1187-90 (reviewing a provision of the M21-1 Manual interpreting § 3.307(a)(6)(iii) as part of an appeal from the Veterans Court). Individual veterans and organizations such as Blue Water also may petition the VA for rulemaking. See 5 U.S.C. § 553(e). We have held that “§ 502 vests us with jurisdiction to review the Secretary’s denial of a request for rulemaking made pursuant to § 553(e).” Preminger v. Sec’y of Veterans Affairs, 632 F.3d 1345, 1352 (Fed. Cir. 2011).[1] Because the February 2016 revision to the M21-1 Manual falls under § 552(a)(2) and not § 552(a)(1) or § 553, however, we lack jurisdiction under § 502 to hear Petitioners’ direct challenge to the revision. We recognize the costs that today’s outcome imposes on Petitioners and the veterans they represent. Petitioners sought direct review in this court to bypass yet another years-long course of individual adjudications or petitions for rulemaking. Given the health risks that many of these veterans face, Petitioners’ urgency is understandable. But we are constrained by the narrow scope of the jurisdiction that Congress has granted to us. We also note that, although the VA has delayed review of its interpretation by revising its manual instead of pursuing formal rulemaking, “that convenience comes at a price.” Perez v. Mortg. Bankers Ass’n, — U.S. -, 135 S.Ct. 1199, 1204, 191 L.Ed.2d 186 (2015). As the VA admits, an interpretive rule in an administrative manual “laek[s] the ‘force and effect of law,’ and thus receive[s] different “weight in the adjudicatory process.’ ” Gray Resp. Br. at 30 (quoting Perez, 135 S.Ct. at 1204). And, agencies’ “interpretations contained in ... agency manuals ... do not warrant Chevron-style deference.” Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (citations omitted). We must await an individual action to assess the propriety of the VA’s interpretation of the Agent Orange Act and attendant regulations. III. Conclusion For these reasons, we dismiss the petition for lack of jurisdiction.[2] DISMISSED . Indeed, the parties advised us at oral argument that Gray and several other veterans have filed appeals to the Veterans Court from the VA’s denials of their claims for disability compensation under the revised provision of the M21-1 Manual. Oral Argument at 6:53-8:13, Gray v. Sec'y of Veterans Affairs, 2016-1782, available at http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2016-1782.mp3. Counsel for Gray and Blue Water also informed us that a petition for rulemaking regarding the definition of “inland waterways” is pending before the VA. Id. at 13:05-13:34. . Also before us are two motions by Blue Water to supplement the index of record. No. 16-1793, ECF Nos. 22, 30. Because we lack jurisdiction to consider the merits of the VA’s action, we deny both motions as moot.