# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-0125

PATRICK M. OVERTON, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 20, 2018                    Decided September 19, 2018)

*Jerome T. Wolf*, of Kansas City, Missouri, for the appellant.

*Jeremy Yung-Ping Wong*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Sarah H. Fusina*, Acting Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and PIETSCH and ALLEN, *Judges*.

ALLEN, *Judge*: In *Gray v. McDonald*,[1] this Court held that VA's interpretation of 38 C.F.R. § 3.307(a)(6)(iii) designating Da Nang Harbor as an offshore waterway, while designating other bays and harbors as inland waterways, was arbitrary and capricious.[2] The Court remanded the matter for VA to reevaluate its waterway definitions in light of the purpose of the regulation— to provide compensation based on the probability of herbicide exposure.[3] In February 2016, VA modified its definition of "inland waterways" in its *Adjudications Procedures Manual* (M21-1),[4] opting not to adopt a formal regulation in title 38 of the Code of Federal Regulations and, thereby, obviating the requirement for notice-and-comment under the Administrative Procedure Act (APA).[5] The new M21-1 provision excluded all Vietnamese bays and harbors from the definition

---

[1] 27 Vet. App. 313 (2015).

[2] *Id*. at 326-27.

[3] *Id.*

[4] VA ADJUDICATIONS PROCEDURES MANUAL (M21-1), pt. IV, sbpt. ii, ch. 1, sec. H.2.a (Feb. 2018). The provision was last updated in March 2018.

[5] *See* 5 U.S.C. §§ 552(a)(1)(D), 553; *see also DAV v. Sec'y of Veterans Affairs*, 859 F.3d 1072, 1077 (Fed. Cir. 2017) ("There is no notice-and-comment rulemaking for [M21-1] revisions as required by § 553.").

of "inland waterways."[6] In June 2017, the Federal Circuit decided *DAV v. Secretary of Veterans Affairs,* in which it held that the M21-1 is an internal manual used to guide VA adjudicators and does not establish substantive rules.[7] The Federal Circuit specifically noted that the Board is not bound by the M21-1.[8]

Before us today is U.S. Navy veteran Patrick M. Overton who served on active duty from March 1967 to February 1968, including service aboard the U.S.S. *Providence* while it operated and anchored in Da Nang Harbor from October to December 1967. He appeals a November 1, 2016, Board of Veterans' Appeals decision that denied service connection for type II diabetes mellitus with retinopathy and ischemic heart disease, both including as due to herbicide exposure.[9] The Board concluded that the appellant had not demonstrated actual exposure to herbicides and also that he was not entitled to the presumption of exposure.[10] The Board relied on the modified M21-1 provision to deny the appellant's claims concerning presumptive herbicide exposure.[11] Yet, the Board did not discuss why it relied on the M21-1. The appeal is timely, and the Court has jurisdiction to review the Board's November 2016 decision.[12] This matter was referred to a panel of the Court primarily to address the Board's reliance on VA's new M21-1 provision. The Court will also address the basis for its reasoning in *Gray*.

As we explain below, the Court holds that when relying on any M21-1 provision, the Board must independently review the matter the M21-1 addresses. If after such review, the Board chooses to rely on the M21-1 as a factor in its analysis or as the rule of decision, it must provide adequate reasons or bases for doing so. The Board may not simply rely on the nonbinding M21-1 position without analysis. Because the Board did not engage in the appropriate analysis here, the Court will set aside the November 1, 2016, Board decision and remand the matter for readjudication consistent with this decision. Given this disposition, the Court declines to opine on the content of

---

[6] M21-1, pt. IV, sbpt. ii, ch. 1, sec. H.2.a.

[7] 859 F.3d at 1077-78.

[8] *Id.* at 1077; *see also Gray v. Sec'y of Veterans Affairs*, 875 F.3d 1102, 1108 (Fed. Cir. 2017) (affirming the Federal Circuit's position in *DAV* that the Board is not bound by M21-1 provisions).

[9] Record (R.) at 2-19.

[10] R. at 8-19.

[11] R. at 14 ("The new guidance is that all harbors and bays are considered offshore, while all rivers and deltas are considered inland.").

[12] 38 U.S.C. §§ 7252(a) and 7266(a).

the revised M21-1 provision on which the Board relied. And, finally, the Court will also remand the decision concerning direct exposure because the Board's analysis may be affected by the actions it takes on remand concerning presumptive exposure.

## I. FACTS AND PROCEDURAL HISTORY

This matter stems from the appellant's timely Substantive Appeal of a May 2013 VA regional office denial of his claims for benefits for type II diabetes, diabetic retinopathy secondary to diabetes, and ischemic heart disease.[13]

In January 2016, the appellant's private physician, Chris Martin, M.D., opined that the appellant's diabetes may have been caused by exposure to herbicides.[14] The appellant submitted a statement to VA explaining that he had experienced headaches while he was aboard the U.S.S. *Providence*, he reported odd smells, and observed that his headaches lessened in intensity when the ship departed Da Nang Harbor.[15] In March 2016, another private physician, Michael Sokol, M.D., opined that it is at least as likely as not that the appellant was exposed to Agent Orange, which accounts for his development of type 2 diabetes.[16] He noted that the appellant did not have any genetic predisposition to diabetes, which makes it more likely that his exposure to Agent Orange "is the likely precipitant" to that condition.[17] Dr. Martin's and Dr. Sokol's opinions are the only etiological medical evidence of record.

In November 2016, the Board issued the decision on appeal denying the appellant's claims. The Board reviewed the appellant's lay statements that he had been exposed to herbicides while aboard the U.S.S. *Providence* to provide support for combat troops. The Board generally explained that because "inland waterways" are not defined in VA regulations, it would look to the M21-1 for interpretive guidance, which stated that "the following locations are considered to be offshore waters of the Republic of Vietnam: Da Nang Harbor, Nha Trang Harbor, Qui Nhon Bay Harbor, Cam Rahn Bay Harbor, Vung Tau Bay Harbor, and Ganh Rai Bay."[18] Moreover, the Board cited

---

[13] R. at 1428 (initial claim for benefits), 1642 (May 2013 VA rating decision), 1380-81 (Notice of Disagreement), and 1334 (Aug. 2014 Substantive Appeal).

[14] R. at 391.

[15] R. at 274-75.

[16] R. at 418-19.

[17] R. at 629.

[18] R. at 10.

our decision in *Gray v. McDonald* and stated that, as a result of the Court's decision in that matter, VA had updated its policy to treat all bays and harbors in the same way concerning the inland—versus—offshore classification and the M21-1 now provided that "all harbors and bays are considered offshore, while all rivers and deltas are considered inland."[19]

After providing this general explanation, the Board addressed the appellant's claim specifically both on a direct and presumptive exposure basis. As to direct exposure, the Board discounted the appellant's lay statements finding that he had not demonstrated that he was competent to identify herbicides to which he might have been exposed, and the Board provided little probative value to the private medical evidence of record.[20] Thus, the Board denied entitlement on a direct basis for lack of nexus evidence. The Board made short work of entitlement to service connection on a presumptive basis because the M21-1 categorically excluded harbors, such as Da Nang, from presumptive exposure to Agent Orange.[21] The Board adopted that position without discussing why it had decided to follow the M21-1's guidance.[22] This appeal followed.

## II. PARTIES' ARGUMENTS

The appellant argues that his service aboard the U.S.S. *Providence* supports his claims for service connection for diabetes and ischemic heart disease. First, he asserts that he is entitled to the presumption of service connection based on herbicide exposure. He argues that the Board erred when it, without analyzing the probability of herbicide exposure, found he was excluded from the presumption by relying on a an M21-1 provision that service aboard a ship anchored in Da Nang Harbor did not constitute inland waterway service. He alleges that the Board essentially rendered the same analysis that the Court rejected in *Gray*, and thus, remand is warranted.

Further in connection with the presumption, the appellant seeks clarification of the Court's decision in *Gray* to ensure that VA applies the proper standard of review in matters like his. He asserts that the Board is required to determine, based on the particular evidence in his case, whether it is at least as likely as not that there were levels of herbicides present in Da Nang Harbor sufficient

---

[19] R. at 10.

[20] R. at 8-19.

[21] R. at 14.

[22] *Id*.

4

to justify the herbicide exposure presumption, not whether it is probable that he was exposed to herbicides.

Finally, the appellant claims that, regardless of the presumption, he established the likelihood of direct herbicide exposure. He argues that the Board's contrary finding is either clearly erroneous or not supported by an adequate statement of reasons or bases.

The Secretary responds that the Board properly applied VA's policy according to the law and this Court's *Gray* decision. He asserts that the *Gray* Court focused on the inconsistency of deeming certain harbors as "inland waterways" and designating others "offshore waterways," "only finding issue with the inconsistent manner in which it was previously done."[23] He also asserts that since VA revised its policy, it is no longer inconsistent because it establishes a firm, bright-line rule—exclusion of service in all bays and harbors from presumptive herbicide exposure. And as to direct exposure, the Secretary argues that the Board's decision was not erroneous and was supported by adequate reasons or bases.

At oral argument, the appellant insisted that remand in light of the Court's decision in *Gray* is warranted for the Board to find independently whether he is entitled to the presumption based on the probability of exposure. He explained that VA's guidance set forth in the M21-1 is erroneous because geographical line drawing fails to take into account the probability of herbicide exposure. In other words, he argues that to determine whether Da Nang Harbor is an inland waterway, the Board must assess the evidence based on the probability that a veteran's presence in the harbor would likely lead to herbicide exposure, and not simply rely on VA's general conclusion set forth in the M21-1.

Though the Secretary did not argue in his brief that VA's current policy on distinguishing between inland and offshore waterways is based on a reasonable interpretation of its own regulation—38 C.F.R. § 3.307—and warrants *Auer* deference, he raised that argument for the first time at oral argument.[24] He further explained that because the M21-1 contains evidence of this interpretation, which he argues was formally set forth in the Federal Circuit's *Gray v. Secretary of Veterans Affairs* decision, the Board's reliance on the M21-1 for guidance was proper.

---

[23] Secretary's Brief (Br.) at 10.

[24] Oral Argument at 29:15-30:26, *Overton v. Wilkie*, U.S. Vet.App. No 17-0125, (oral argument held on June 20, 2018) (referencing *Auer v. Robbins*, 519 U.S. 452, 461-62. (1997) http://www.uscourts.cavc.gov/oral_arguments_audio.php.

## III. ANALYSIS

The appellant bases his argument for service connection on two theories. First, he argues that he should be entitled to the presumption that he was exposed to herbicides and, therefore, his conditions are service connected.[25] Second, he asserts that even if he is not entitled to the presumption of exposure, he has sufficiently established actual exposure to Agent Orange. We address each theory below.

### A. Presumptive Service Connection

Veterans who "served in the Republic of Vietnam" between January 9, 1962, and May 7, 1975, are presumed to have been exposed to certain herbicides, including Agent Orange.[26] And a second presumption provides that certain conditions, including type II diabetes and ischemic heart disease, are the result of such exposure.[27] "Service in the Republic of Vietnam includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam."[28] In *Haas v. Peake*, the Federal Circuit examined the validity of limiting the herbicide presumption to service members who set foot on land in Vietnam or who served in the inland waterways of that nation.[29] The court concluded that it was reasonable for VA to make such distinctions based on the probability of exposure to herbicides.[30]

In *Gray v. McDonald*, this Court considered VA's regulation designating certain Vietnamese bays and harbors as "inland waterways" (brown water) or "offshore seas" (blue water) in light of *Haas*.[31] The Court explained that VA's definition of "inland waterway" was arbitrary and capricious because it designated some harbors and bays as brown water and some as blue water without basing the designations on the probability of herbicide exposure, including exposure to Agent Orange.[32] Therefore, the Court determined that VA's interpretation was not entitled to deference and remanded the matter for VA to reevaluate its definition.[33]

---

[25] *See* 38 U.S.C. § 1116; 38 C.F.R. § 3.307 (2018).

[26] *Id.*

[27] 38 U.S.C. §1116(a); 38 C.F.R. § 3.307(a)(6)(iii).

[28] 38 C.F.R. § 3.307(a)(6)(iii).

[29] 525 F.3d 1168, 1185, 1192-93 (Fed. Cir. 2008), *cert. denied,* 555 U.S. 1149 (2009).

[30] *Id.*

[31] 27 Vet.App. at 313.

[32] *See, e.g., id.* at 322-23.

[33] *Id.* at 321-27.

6

Less than a year after our decision in *Gray*, VA modified its policy in the M21-1, adopting an interpretation that excluded all Vietnamese bays and harbors from the herbicide presumption. VA redefined inland waterways as

> water rivers, streams, and canals, and similar waterways. Because these waterways are distinct from ocean waters and related coastal features, service in these waterways is service in the [Republic of Vietnam]. VA considers inland waterways to end at their mouth or junction to other offshore water features, as described below. For rivers and other waterways ending on the coastline, the end of the inland waterway will be determined by drawing straight lines across the opening in the landmass leading to the open ocean or other offshore feature, such as a bay or inlet. For the Mekong and other rivers with prominent deltas, the end of the inland waterways will be determined by drawing a line across each opening in the landmass leading to the open ocean.[34]

Shortly thereafter, Mr. Gray, along with the Blue Water Navy Vietnam Veterans Association, directly petitioned the Federal Circuit to invalidate this change to the M21-1.[35] Ultimately, the Federal Circuit concluded that it lacked jurisdiction to review the M21-1, and dismissed the direct regulatory challenge.[36] The Federal Circuit concluded it lacked jurisdiction to consider the challenge because the Board is not bound by the M21-1.[37] This meant that the provision being challenged was not "substantive" under the APA.[38]

Putting all this together, we know first that VA is permitted to draw reasonable lines demarcating inland versus offshore waterways when considering whether a veteran is entitled to the presumption of herbicide exposure.[39] Second, when drawing such a line, VA must do so in a reasoned, nonarbitrary manner focused on the likelihood of herbicide exposure.[40] And finally, the Board is not bound by M21-1 provisions.[41] With this guidance, the Court will evaluate the Board's decision on appeal.

---

[34] M21-1, pt. IV, sbpt. ii, ch. 1, sec. H.2.a.

[35] *Gray,* 875 F.3d at 1102; *see also* 38 U.S.C. § 502.

[36] *Gray,* 875 F.3d at 1109. The Federal Circuit denied rehearing and en banc review of its decision in *Gray.* 884 F.3d 1379 (Fed. Cir. 2018).

[37] *Gray,* 875 F.3d at 1108-09.

[38] *Id*. at 1108.

[39] *Haas*, 525 F.3d at 1185-98.

[40] *See, e.g.,* 27 Vet.App. at 322-26.

[41] *Gray*, 875 F.3d at 1108; *DAV*, 859 F.3d at 1077.

In the decision on appeal, the Board recounted much of the history we have set forth concerning the presumption of herbicide exposure.[42] The Board described the holding in *Haas*, this Court's decision in *Gray*, and the subsequent revision of the M21-1.[43] But the Board provided nothing more than this historical recitation to support its conclusion that Da Nang Harbor is not brown water warranting presumptive herbicide exposure. Instead, the Board tersely stated that the "new guidance," referring to its earlier discussion of the M21-1 provision, deems all harbors or bays offshore, and all rivers and deltas inland.[44] This is error.

The Federal Circuit made it clear that the Board is not bound by the M21-1.[45] This holding is meaningful. To support its decision the Board can't simply cite an M21-1 provision without further analysis. First, doing so would effectively negate the Federal Circuit's decisions in *Gray* and *DAV*. Doing so would convert the M21-1 into substantive rules as a practical matter without providing a means to challenge such rules under the APA. Second, because the M21-1 is not binding on the Board, the Board's citation to a manual provision as the only support for a conclusion–here that Da Nang Harbor is blue water–is inconsistent with the Board's congressionally mandated obligation to provide an adequate statement of reasons or bases for its decisions.[46]

There is no question that the M21-1 provision defining "inland" and "offshore" waterways is relevant to the issues at hand. Indeed, the Board referred to that provision as VA's "new guidance."[47] The Board can't ignore such a relevant provision. But it is equally insufficient for the Board to simply rely on an M21-1 provision, like the one at issue here, without first independently reviewing the matter. The Board is required to provide a reasoned explanation for why it finds the M21-1 an accurate guideline for its decision. In other words, the Board is required to discuss any relevant provisions contained in the M21-1 as part of its duty to provide adequate reasons or bases, but because it is not bound by those provisions, it must make its own determination before it chooses to rely on an M21-1 provision as a factor to support its decision. Therefore, the Court

---

[42] R. at 8-10.

[43] *Id.*

[44] R. at 15.

[45] *Gray,* 875 F.3d at 1108; *DAV*, 859 F.3d at 1077.

[46] *See* 38 U.S.C. § 7104(d)(1); *see also Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

[47] R. at 16.

concludes that though the Board was correct in acknowledging the relevance of the M21-1 provision delineating inland and offshore waterways, the Board failed to explain in any way why it relied on that position. This failure renders its statement of reasons or bases insufficient for judicial review and necessitates remand.[48]

Further, the Board appears to suggest that an all-or-nothing rule, stating that all bays and harbors are or are not inland waters, automatically alleviates the problem this Court identified in *Gray*.[49] This is not correct. The Court in *Gray* made clear that there must be some rationale for deciding what makes a bay or harbor an inland or offshore waterway.[50] Because there was no rhyme or reason for why VA was designating some waterways but not others as inland waters, the designation was inconsistent with the purpose of the regulation establishing the presumption—to compensate veterans based on the probability or likelihood of exposure to herbicides.[51] This was the rationale for the Court's decision in *Gray*. The Board erred to understand otherwise. The issue was not merely a lack of uniformity. Thus, on remand, the Board must explain why its determination of entitlement to presumptive service connection is based on likely herbicide exposure and achieves the purpose behind the regulation.[52]

Before moving on, the Court must address one final matter concerning presumptive herbicide exposure. For the first time at oral argument, the Secretary suggested that the Court should defer to his interpretation in the M21-1 under *Auer v. Robins*.[53] This argument appears nowhere in the Secretary's brief – indeed, *Auer* is not even cited.[54] For three reasons, the Court declines to consider deference under *Auer*.

---

[48] *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate); *see also Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gilbert*, 1 Vet.App. at 52.

[49] R. at 10.

[50] *Gray*, 27 Vet.App. at 322-26.

[51] *See, e.g., id*. at 324-26.

[52] The appellant rather confusingly argues that the Board misconstrued the Court's holding in *Gray* when it analyzed the evidence of record based on whether it is probable that he was exposed, rather than rendering a determination whether it is "at least as likely as not" that he was exposed to herbicides. *See* Appellant's Br. at 26-27. He seems to argue that *Gray* adopted an evidentiary standard. It did not. *Gray* was concerned with whether a regulation was lawful. It in no way changed any evidentiary standard or burden of proof.

[53] Oral Argument at 29:15-30:26, http://www.uscourts.cavc.gov/oral_arguments_audio.php. (referring to *Auer v. Robins*, 519 U.S. 452, 461-62 (1997)).

[54] *See generally* Secretary's Br.

First, the Court has made clear that it "generally will not entertain arguments raised by counsel at oral argument for the first time."[55] Such conduct is not helpful to the Court and is fundamentally unfair to opposing counsel. This alone is a reason not to consider the argument.[56]

Second, there is nothing special about deference under *Auer* that suggests that an argument concerning that doctrine can't be waived by failing to raise it in the brief. Both this Court and the Federal Circuit have specifically found *Auer* arguments to be subject to waiver.[57]

Third, even if the *Auer* argument had not been waived, it would be misplaced here. We are not reviewing the position set forth in the M21-1. After all, the M21-1 provision is not a substantive rule of law.[58] Rather, we are reviewing the final Board decision on the appellant's claims.[59] As we explained, the Board's decision is deficient because the Board did not explain why it relied on the M21-1 and its conclusions concerning the brown water/blue water distinctions for Vietnamese harbors and bays. Thus, we are not called on to express any view about what the M21-1 says, and we don't. In essence, there is nothing to defer to here because in terms of the Board's rationale for adopting the M21-1's position, the Board's decision is deficient as a matter of law.

In sum, because the Board did not adequately explain the bases for its decision on presumptive herbicide exposure, remand is required.[60] We now turn briefly to the other issues this appeal raises.

## B. Direct Service Connection

"The availability of presumptive service connection for some conditions based on exposure to Agent Orange does not preclude direct service connection for other conditions based on Agent Orange exposure."[61] Here, the Board also denied the appellant entitlement to service connection

---

[55] *Sellers v. Wilkie*, 2018 WL 4040024, U.S. Vet. App. at *6 (Aug. 23, 2018); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1263 (11th Cir. 2004) ("A party is not allowed to raise at oral argument a new issue for review."); *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1332-33 (Fed. Cir. 2001) ("It is well settled that an appellant is not permitted to make new arguments that it did not make in its opening brief."); *Tarpley v. Greene*, 684 F.2d 1, 7 n.17 (D.C. Cir. 1982) ("Clearly, oral argument on appeal is not the proper time to advance new arguments or legal theories."); *Norvell v. Peake*, 22 Vet.App. 194, 201 (2008) ("This Court and the U.S. Court of Appeals for the Federal Circuit have repeatedly discouraged parties from raising arguments that were not presented in an initial brief to the Court").

[56] *See Sellers*, 2018 2018 WL 4040024, at *6.

[57] *See Mass. Mut. Life Ins. Co. v. U.S.*, 782 F.3d 1354, 1369 (Fed. Cir. 2015); *Norvell*, 22 Vet.App. at 201.

[58] *See Gray*, 875 F.3d at 1108; *DAV*, 859 F.3d at 1077-78.

[59] *See* 38 U.S.C. §§ 7252(a) and 7266(a).

[60] *See Tucker*, 11 Vet.App. at 374.

[61] *Stefl v. Nicholson,* 21 Vet.App. 120, 123 (2007); *see also Polovick v. Shinseki*, 23 Vet.App. 48, 52-53

for type II diabetes and ischemic heart disease on a direct basis due to herbicide exposure. The Board concluded that the weight of the probative evidence of record was against finding that the appellant was exposed to herbicides while stationed aboard the U.S.S. *Providence* when it was in Da Nang Harbor.[62] The appellant argues that the Board's finding is clearly erroneous,[63] or, in the alternative, is not supported by an adequate statement of reasons or bases.[64]

The Court declines to address the appellant's arguments at this time. As explained above, we are remanding this matter as it relates to presumptive service connection so that the Board may adequately explain why Da Nang Harbor should or should not be considered brown water for purposes of the presumption of herbicide exposure. Consistent with our decision in *Gray,* that assessment must be made based on the likelihood of exposure to herbicides. The analysis (and potential development associated with that effort) in which the Board may engage with respect to the presumptive exposure question may affect the Board's assessment of direct exposure.

Given all of this, we are not confident that the direct exposure claim is sufficiently independent of the presumptive exposure claim to resolve the matter at this point. For example, we don't know how the Board will develop the record to support its conclusion on Da Nang Harbor's status concerning presumptive herbicide exposure. That development could easily implicate the direct exposure analysis. Thus, and given the potential interconnectedness of these matters, we conclude that remand of the direct exposure theory is advisable.[65]

## C. Other Matters

The appellant also challenges the Board's determination that VA's duty to assist has been satisfied and claims that his due process rights have been violated. Because the Court has determined that remand is necessary, it need not consider these arguments.[66] In pursuing his case on remand, the appellant is free to submit additional evidence and argument, including the specific

---

(2009).

[62] R. at 14-16.

[63] 38 U.S.C. § 7261(a)(4); *see Dyment v. West*, 13 Vet.App. 141, 144 (1999) (stating that a finding of service connection, or a lack of service connection, is a finding of fact that the Court reviews under the "clearly erroneous" standard).

[64] *See, e.g.,* Appellant's Br. at 17-20, 23-27.

[65] *See Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001) (holding that where the facts underlying two claims are "intimately connected," the interests of judicial economy and of avoiding piecemeal litigation require the claims to be appealed together).

[66] *Best v. Principi*, 15 Vet.App. 18, 20 (2001).

arguments raised here on appeal, and has 90 days to do so from the date of VA's post remand notice.[67] The Board is required to consider any such relevant evidence and argument. It must also proceed expeditiously, in accordance with 38 U.S.C. § 7112.[68]

## IV. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court SETS ASIDE the November 1, 2016, Board decision and REMANDS the matter for readjudication consistent with this decision.[69]

---

[67] *See Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92 (2018).

[68] *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

[69] The Secretary's April 30, 2018, motion for leave to file a notice of correction remains pending before the Court. We deny that motion as moot.