# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-3439

FREDERICK L. PAYNE, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 25, 2019                           Decided August 9, 2019)

*Ethan F. Maron*, of Washington, D.C., for the appellant.

*Sarah Catherine Blackadar*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Kenneth A. Walsh*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before DAVIS, *Chief Judge*, and BARTLEY and MEREDITH, *Judges*.

MEREDITH, *Judge*: The appellant, Frederick L. Payne, through counsel appeals a September 26, 2017, decision by the Board of Veterans' Appeals (Board) that denied entitlement to initial disability ratings in excess of 50% and 40% for hand arm vibration syndrome, right (major) and left (minor) carpal tunnel syndrome, respectively (collectively, upper extremity disabilities). Record (R.) at 1-39. The Board also determined that no action was necessary[1] with respect to entitlement to the following benefits because the appellant did not file formal "new claims" pursuant to 38 C.F.R. § 3.155 (2017):[2] (1) entitlement to a total disability rating based on

---

[1] There is no dispute between the parties that, when the Board determined that "no further action is necessary, . . . with respect to the claims previously referred or any claims not formally filed," R. at 6, it implicitly determined that it lacked jurisdiction over those claims, Appellant's Brief (Br.) at 10; Secretary's Br. at 13-20; Appellant's Supplemental (Supp.) Br. at 1-10; Secretary's Supp. Br. at 1-8. The Court agrees and, as discussed below, will review the Board's determination de novo.

[2] Effective February 19, 2019, VA amended portions of § 3.155 to comply with the appeals processing changes mandated by the Veterans Appeals Improvement and Modernization Act of 2017 (VAIMA), Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). *See* VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 168-69 (Jan. 18, 2019) (final rule); VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019) (notification of effective date). However, the subparagraph to be interpreted in this appeal—38 C.F.R. § 3.155(d)(2) (2017), effective from March 24, 2015, to February 18, 2019 (the post-2014 version)—was unaffected. Thus, for purposes of this appeal, citations to § 3.155(d)(2) will refer to the post-2014 version, which remains the same as the February 2019 version in effect on the date of this decision.

individual unemployability (TDIU) prior to March 4, 2005; (2) disability compensation for erectile dysfunction (ED) as secondary to the appellant's service-connected disabilities; and (3) special monthly compensation based on the loss of use of a creative organ (SMC(k)). R. at 5-6, 37.[3]

This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was submitted to a panel of the Court, with oral argument, to address two issues of first impression. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). First, whether section 1114(k) of title 38, U.S. Code, limits potential entitlement to SMC(k) to veterans with certain service-connected disabilities or precludes a theory of entitlement based on a multi-link causal chain between the service-connected disability and the anatomical loss or loss of use of one or more creative organs. Second, whether VA's 2014 amendment to § 3.155 requires that a veteran file a formal claim for entitlement to SMC(k) as an ancillary benefit to a service-connected disability for the issue to be within the Board's jurisdiction.[4] Further, to assist the Court in the resolution of these matters, the Court directed the parties to file supplemental briefs, which they did on September 27, 2018. For the following reasons, the Court will reverse the portions of the Board's decision that determined that it lacked jurisdiction over the matters of entitlement to SMC(k) and TDIU prior to March 4, 2005, and remand the matters for further proceedings consistent with this decision. The Court will affirm the portion of the Board's decision that denied entitlement to increased initial disability ratings for the upper extremity disabilities.

## I. BACKGROUND

The appellant served on active duty in the U.S. Air Force from February 1980 to July 1992. R. at 16699. Upon discharge, he filed disability compensation claims for bilateral carpal tunnel syndrome. R. at 16692-95. In April 1993, a VA regional office (RO) granted entitlement to disability compensation and awarded 10% disability ratings for each hand, effective July 14, 1992, R. at 16650-55; and, in July 1993, the appellant disagreed with the assigned disability ratings, R. at

---

[3] The Board also determined that the issue of entitlement to TDIU after August 31, 2011, was not reasonably raised by the record or the appellant. The appellant does not raise any argument concerning that Board determination or the Board's finding that it lacked jurisdiction over a new claim for entitlement to disability compensation for ED as secondary to the appellant's service-connected disabilities. Therefore, the Court finds that he has abandoned his appeal of these issues and will dismiss the appeal as to the abandoned issues. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

[4] The University of Miami School of Law hosted oral argument at the Storer Auditorium at the University of Miami School of Business Administration. The Court thanks both schools for their hospitality.

16642. In August 1993, the RO issued a Statement of the Case (SOC) that denied entitlement to higher disability ratings. R. at 16633-41. Although the appellant did not perfect an appeal to the Board, the record reflects that his 1993 appeal did not become finally denied because the August 1993 SOC was not mailed to the appellant's correct address. R. at 5212.

After a lengthy procedural history, in August 2004, the RO issued an SOC increasing the disability rating for carpal tunnel syndrome of the right hand to 30%, effective July 14, 1992, and to 50%, effective February 26, 2003; and of the left hand to 20%, effective July 14, 1992, and to 40%, effective February 26, 2003. R. at 15556-77. The appellant perfected his appeal in September 2004. R. at 15382-532.

In March 2005, while his appeal was pending, he filed a request for TDIU, alleging that he was unable to secure or follow substantially gainful employment as a result of his upper extremity disabilities. R. at 15201-02, 15212-14. The RO granted his request in an April 2005 rating decision and assigned an effective date of March 4, 2005. R. at 15188-93. The appellant did not appeal the April 2005 rating decision. However, he continued to pursue appeals as to the appropriate evaluations for his service-connected upper extremity disabilities.

After several Board decisions and appeals to the Court, in July 2013, the RO increased the initial disability ratings for right and left carpal tunnel syndrome to 50% and 40%, respectively, both effective July 14, 1992. R. at 2966-74. The Board remanded the matters for further development in February 2015. R. at 1932-51. A March 2015 VA treatment note reflects that the clinician advised the appellant "on doing aquatic exercises since he is not able to do heavy exercise given multiple surgeries to his upper extremities." R. at 285. The clinician noted that the appellant has "low testosterone likely due to low [sex-hormone-binding globulin levels] from obesity," his "main symptom[] is [ED] which is likely due to uncontrolled [type 2 diabetes]," and "[t]estosterone will not help with improving ED." *Id.* A May 2015 VA examination report further reflects that he had been impotent and "unable to obtain a penile erection since May 2014." R. at 564.

In October 2015, the Board denied initial disability ratings in excess of 50% and 40%, respectively, for right and left hand arm vibration syndrome on schedular and extraschedular bases and found that the issue of entitlement to TDIU prior to March 4, 2005, had not been raised by the record because the appellant did not appeal the effective date assigned in the April 2005 rating decision that granted TDIU. R. at 728-57. On appeal, the Court vacated the Board's decision and

3

remanded the matters for readjudication pursuant to the terms of the parties' May 2016 joint motion for remand (JMR). R. at 714-25.

The appellant's counsel, in September 2016, submitted written argument to the Board, asserting that the appellant was entitled to TDIU from July 14, 1992, to March 3, 2005, and to separate disability ratings for the upper extremities under diagnostic codes (DCs) for the lower extremities because his bilateral arm pain inhibited his ability to ambulate, thereby resulting in functional loss of his lower extremities. R. at 117-25; *see* R. at 122-25 (vocational expert's opinion submitted in support of TDIU argument). He also argued that SMC(k) for loss of use of a creative organ was warranted as an ancillary benefit to the upper extremity claims and proffered the following:

> A May 2015 VA examination report related that the [appellant] had been impotent and unable to obtain a penile erection since May 2014. . . . [The appellant's] weight gain has been exacerbated by his service-connected upper extremity conditions. The VA treatment record shows that the [appellant] is morbidly obese, and a March 2007 VA primary care note observed that obesity had contributed to hypertension and [a] history of transient ischemic attack. The [appellant] is presently service-connected for cardiovascular disease, rated at [100%]. In short, it is at least as likely as not that [the appellant's] service-connected upper extremity disorders have materially contributed to conditions, such as obesity and cardiovascular disease, associated with [ED].

R. at 120.

In a December 2016 decision, the Board remanded the matters of entitlement to initial disability ratings in excess of 50% and 40% for the upper extremity disabilities for compliance with the May 2016 JMR, and referred to the RO "new claims for an effective date earlier than March 4, 2005[,] for the award of TDIU, [disability compensation] for [ED] as secondary to the [appellant's] service-connected disabilities, and entitlement to [SMC(k)]" for appropriate action, to include forwarding to the appellant and his representative the VA standardized form for filing claims. R. at 619-20 (citing 38 C.F.R. § 3.155(b)(1)(ii) (2015)). Later that month, the RO mailed the VA standardized forms to the appellant and his counsel, R. at 182-84, but the appellant did not return the forms. The RO subsequently issued a Supplemental SOC denying initial disability ratings in excess of 50% and 40% for the upper extremity disabilities. R. at 170-79. In April 2017, the appellant's counsel submitted written argument to the Board, referencing the arguments raised in her September 2016 brief and adding that, "contrary to his most recent VA examination, [the

appellant was] experiencing muscle wasting in the right hand" and that a more contemporaneous medical examination was warranted. R. at 114-15.

On September 26, 2017, the Board denied higher initial disability ratings for the appellant's upper extremity disabilities and determined that the issues of entitlement to SMC(k) and TDIU prior to March 4, 2005, were not before it. R. at 1-39. This appeal followed.

## II. ANALYSIS

### A. The Board's Jurisdiction to Adjudicate Entitlement to SMC(k)

"It is well settled that the Court has jurisdiction to determine whether the Board had jurisdiction to take the action it takes in a decision," *Young v. Shinseki*, 25 Vet.App. 201, 203 (2012) (en banc order), and "the Court exercises de novo review over Board determinations that are critical to its jurisdiction," *Evans v. Shinseki*, 25 Vet.App. 7, 10 (2011). The ultimate burden of establishing jurisdiction rests with the appellant. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 188-89 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252, 255 (1992).

As explained below, the Board erred when it determined that it lacked jurisdiction over entitlement to SMC(k). Section 3.155(d)(2) of title 38, Code of Federal Regulations, does not require claimants to file a formal claim to assert entitlement to ancillary benefits, such as SMC(k). And, contrary to the Secretary's assertions, section 1114 does not limit potential entitlement to SMC(k) to veterans with certain service-connected disabilities, nor does it preclude a theory of entitlement based on a multi-link causal chain between the service-connected disability and the anatomical loss or loss of use of one or more creative organs. Thus, the Board should have considered the merits of the appellant's explicitly raised argument that he was entitled to SMC(k) as an ancillary benefit to his service-connected upper extremity disabilities.

### 1. Parties' Arguments and The Board's Decision

The appellant argues that the Board legally erred when it required that he file a formal claim for entitlement to SMC(k) for his loss of use of a creative organ as ancillary to his service-connected upper extremity disabilities before it could exercise jurisdiction over the matter. Appellant's Br. at 11. He asserts that the matter was within the Board's jurisdiction and should have been adjudicated in the first instance because (1) the plain text of section 1114(k) does not indicate that Congress intended to preclude his theory of entitlement to SMC(k); (2) he explicitly argued for entitlement to SMC(k) to the Board and proffered evidence demonstrating a causal relationship

between his service-connected upper extremity disabilities and his loss of use of a creative organ; and (3) the post-2014 version of § 3.155 does not require claimants to file a formal claim for entitlement to ancillary benefits, such as SMC(k). *Id.*; Reply Br. at 7-10; Appellant's Supp. Br. at 3-14.

The Secretary counters that the Board properly declined to adjudicate entitlement to SMC(k) because it lacked jurisdiction over the matter. Secretary's Br. at 18-19. He asserts that the Board lacked jurisdiction because (1) the matter before the Board was not for a service-connected condition affecting the use of a creative organ, such as ED or a genitourinary disability under 38 C.F.R. § 4.115b; and (2) even under the appellant's explicitly raised SMC(k) argument, his loss of use of a creative organ was not "the result of" (immediately caused by) his service-connected upper extremity disabilities—the only disabilities before the Board. 38 U.S.C. § 1114(k); *see* Secretary's Br. at 18-19; Secretary's Supp. Br. at 2-12; Oral Argument ("Oral Argument") at 28:33-28:41, 30:05-08, 32:06-19, *Payne v. Wilkie*, U.S. Vet. App. No. 17-3439 (oral argument held Jan. 25, 2019), http://www.uscourts.cavc.gov/documents/Payne.mp3. Therefore, he argues, although the 2014 amendment to § 3.155 "did not change the requirement to consider ancillary benefits such as SMC," here, the Board lacked jurisdiction to decide the issue because "the disability or condition to which SMC[(k)] would be ancillary[—ED—]was not within the Board's jurisdiction." Secretary's Supp. Br. at 5.

In the decision on appeal, the Board acknowledged that, in September 2016, the appellant explicitly argued for entitlement to SMC(k) based on the loss of use of a creative organ. R. at 5-6. However, the Board determined that the issue of entitlement to SMC(k) was not before it because the appellant did not file a formal "new claim[]" for this benefit. R. at 5-6. It explained that, after September 2014, § 3.155 requires that "all claims governed by VA's adjudication regulations must be filed on standard forms prescribed by VA, regardless of the type of claim or posture in which the claim arises." R. at 6. The Board found that, pursuant to the instructions in its December 2016 decision, the RO mailed to the appellant the standard form required to file a formal claim; and, although he raised the same argument for entitlement to SMC(k) in his April 2017 brief to the Board, *see* R. at 114, he never returned the required form, R. at 6. Thus, the Board concluded that "the [appellant] has not formally filed new claims for benefits, and no further action is necessary by the Board with respect to the claims previously referred or any claims not formally filed since that time," including the matter of entitlement to SMC(k) for loss of use of a creative organ. *Id.*

To address the parties' arguments, the Court will first consider whether section 1114(k) precludes the appellant's theory of entitlement. Then, based on our conclusion that section 1114(k) is not limited to veterans with certain service-connected disabilities and that the statute contemplates a broad causation requirement, the Court will consider whether the post-2014 version of § 3.155(d)(2) required the Board to adjudicate the appellant's explicitly raised theory of entitlement as ancillary to his service-connected upper extremity disabilities or whether the appellant was required to file a formal claim for entitlement to SMC(k).

*2. Statutory Interpretation of Section 1114(k)*

In addition to the basic monthly rates of disability compensation for injuries or diseases incurred in or aggravated by active military service, section 1114(k) provides that a higher level of monthly compensation—SMC(k)—may be paid to any veteran who, "as the result of service-connected disability, has suffered the anatomical loss or loss of use of one or more creative organs." 38 U.S.C. § 1114(k); *see* 38 C.F.R. § 3.350 (2019). "When a statute is at issue, we begin with the statutory language." *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see Williams v. Taylor*, 529 U.S. 420, 431 (2000). "The statute's plain meaning is derived from its text and its structure." *McGee*, 511 F.3d at 1356; *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

The first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. The interpretation of a statute is a question of law that the Court reviews de novo, without deference to the Board's interpretation. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

Here, the questions at issue are the following: (1) Does section 1114(k) limit potential entitlement to SMC(k) to veterans who suffer the anatomical loss or loss of use of one or more creative organs as a result of specific service-connected disabilities? (2) Does section 1114(k)

7

preclude a theory of entitlement based on a multi-link causal chain between a service-connected disability and the loss of use of a creative organ? As explained below, the Court concludes that the plain text of section 1114(k) makes clear that Congress specifically and unambiguously answered both questions at issue: "No."

Section 1114(k) provides: "[I]f the veteran, *as the result of service-connected disability*, has suffered the anatomical loss or loss of use of one or more creative organs," he or she may be entitled to SMC(k). 38 U.S.C. § 1114(k) (emphasis added). First, the plain text of section 1114(k) does not specify the types of service-connected disabilities that may result in the "anatomical loss or loss of use of one or more creative organs" for purposes of that subsection. However, in other subsections of section 1114, Congress explicitly limited entitlement to SMC to veterans with specific service-connected disabilities. *See*, *e.g.*, 38 U.S.C. § 1114(o), (p) (specifying service-connected blindness or deafness as prerequisites for some types of SMC). Because Congress did not explicitly include such limitations when drafting section 1114(k), the Court presumes that it did not intend to limit potential entitlement to SMC(k) only to veterans with specific service-connected disabilities. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))).

Second, section 1114(k)'s textual causation requirement—that the anatomical loss or loss of use of a creative organ be "the result of" a service-connected disability—is broad and does not indicate that Congress intended to preclude a theory of entitlement based on a multi-link causal chain between the service-connected disability and the loss of use. 38 U.S.C. § 1114(k).[5] *See, e.g.*, *Gardner*, 513 U.S. at 119-20 (holding that "as a result of" in a veterans compensation statute, 38 U.S.C. § 1151 (1988), "is naturally read simply to impose the requirement of a causal connection").

---

[5] Because the issue here is only whether the appellant's theory of entitlement to SMC(k) is precluded by statute and, thus, could not have been adjudicated as a potential ancillary benefit to his service-connected upper extremity disabilities, the Court makes no conclusions as to whether the length of the causal chain between a service-connected condition and the loss of use of a creative organ may be taken into account in deciding on the merits whether SMC is warranted or what degree of causation may be warranted in other contexts.

In *Murakami v. United States*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) interpreted "as a result of"—albeit, in the context of the Civil Liberties Act of 1988, 50 U.S.C. app. § 1989b-7 (2000)—as "broad language." 398 F.3d 1342, 1351 (Fed. Cir. 2005) ("[T]he verb 'result' commonly means 'to proceed, spring, or arise as a consequence, effect, or conclusion.'" (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1937 (1993))). The Federal Circuit interpreted "as a result of" to require merely a showing of "a consequence or effect" and explained that this broad interpretation was consistent with the Supreme Court's and other circuit courts' interpretation of the same phrase. *Id.* at 1351-52 (citing *Gardner*, 513 U.S. at 119-20; *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 975 (10th Cir. 1994) ("The use of the plain language—'as a result of'[ in a U.S. Army regulation]—is logically interpreted to mean 'caused by.'")).

The Secretary argues that, consistent with the appellant's theory of entitlement to SMC(k) raised to the Board and the evidence of record, the service-connected upper extremity disabilities caused obesity, which caused other non-service-connected disabilities, which caused his loss of use of a creative organ. Secretary's Supp. Br. at 9-10. He essentially argues that, because the upper extremity disabilities are the first link in a multi-link causal chain, rather than the last link or a link closer to the end of the chain, the loss of use of a creative organ could not have potentially been "the result of," 38 U.S.C. § 1114(k), the service-connected upper extremity disabilities; and therefore, the issue of entitlement to SMC(k) was not within the scope of the upper extremity disability claims on appeal to the Board. *Id.*

Notably, the Secretary has not pointed to any authority to support his argument for a narrow interpretation of section 1114(k)'s causation requirement. *See* Secretary's Supp. Br. at 8-10. Instead, he essentially invites the Court to add limitations into the statute where Congress did not; the Court, however, "resist[s] reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997). Following the Federal Circuit's reasoning, "if Congress had intended eligibility only to" veterans who allege a closer causal connection between their service-connected disability and the anatomical loss or loss of use of a creative organ, "it could have used stricter language in crafting [section 1114(k)]." *Murakami*, 398 F.3d at 1352 (citing *Williams*, 529 U.S. at 431 (stating that, when interpreting a statute, "[w]e give the words . . . their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import" (internal quotation marks omitted)); *Doyon,*

9

*Ltd. v. United States*, 214 F.3d 1309, 1316 (Fed. Cir. 2000) ("If Congress had intended such a limited effect, it could have crafted a more narrowly tailored statute.")).

In sum, the Court holds that the plain text of section 1114(k) does not limit potential entitlement to SMC(k) to veterans with certain service-connected disabilities or preclude a theory of entitlement based on a multi-link causal chain between the service-connected disability and the anatomical loss or loss of use of one or more creative organs; and that ends the matter. *See Procopio v. Wilkie*, 913 F.3d 1371, 1375 (Fed. Cir. 2019). Accordingly, the Court is not persuaded by the Secretary's argument that the appellant's expressly raised theory of causation—that the upper extremity disabilities "materially contributed to his development of conditions, such as obesity and [service-connected] cardiovascular disease, associated with [ED]"—was, essentially, too tenuous for the issue of entitlement to SMC(k) to be before the Board as a potentially ancillary benefit to the upper extremity claims on appeal.[6] R. at 120; *see* Secretary's Br. at 18-19; Secretary's Supp. Br. at 2-12.

*3. The post-2014 Version of § 3.155*

Having determined that section 1114(k) does not preclude a theory of entitlement to SMC(k) as a potentially ancillary benefit to the appellant's service-connected upper extremity claims, the Court must assess whether the Board erred when it determined that the issue of SMC(k) was not before it because the appellant did not file a formal claim for SMC(k) pursuant to the post-2014 version of § 3.155. We start with the general proposition, announced prior to the adoption of the post-2014 version of § 3.155, that Congress has mandated that VA "'fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits.'" *Hodge v. West*, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998) (quoting H.R. Rep. No. 100-963, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5794-95); *see* 38 C.F.R. § 3.103(a) (2019) ("[I]t is the obligation of VA . . . to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government.").

In accordance with that mandate, the Court has previously held that, when developing a claim "'to its optimum,'" VA adjudicators should consider entitlement to SMC(k) as an ancillary

---

[6] To be clear, the Court expresses no opinion on the merits of the appellant's theory of entitlement, i.e., whether his loss of use of a creative organ is sufficiently caused by his upper extremity disability, or whether the evidence of record, alone, would have been sufficient to reasonably raise this theory of entitlement and required the Board to adjudicate it as an inferred issue. As discussed above, the Court concludes only that section 1114(k) does not foreclose the appellant's theory.

benefit to basic disability compensation where the medical evidence indicates potential eligibility. *Norris v. West*, 12 Vet.App. 413, 420 (1999) (quoting *Hodge*, 155 F.3d at 1362-63); *see Akles v. Derwinski*, 1 Vet.App. 118, 121 (1991) (holding that VA "should have inferred from the veteran's request for an increase in benefits involving a creative organ a request for [SMC(k),] whether or not it was placed in issue by the veteran" because VA's *Adjudication Procedures Manual* (M21-1), "which contains VA's policy and procedures for the adjudication of claims, provides for the consideration of [SMC] as an inferred issue" (internal quotation marks omitted)); *see generally* MANUAL M21-1, pt. III, subpt. iv, ch. 6, § B(2) (last revised on Jan. 8, 2018). Further, the Board is required to consider all theories of entitlement to VA benefits that are either raised by the claimant or reasonably raised by the record, *Robinson v. Peak*e, 21 Vet.App. 545, 553 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009), and the Court has jurisdiction to review whether the Board erred in failing to consider such theories, *Barringer v. Peake*, 22 Vet.App. 242, 244 (2008).

Here, the Board noted, and the parties do not dispute, that the appellant *explicitly argued* that he was entitled to SMC(k) for loss of use of a creative organ as a result of his service-connected upper extremity disabilities. R. at 5. However, rather than adjudicate the matter on the merits, the Board determined that the issue was not before it because the appellant had not filed a formal claim for entitlement to SMC(k), pursuant to the post-2014 version of § 3.155. R. at 5-6.

In 2014, VA amended its regulations, effective March 2015, to require that all claims for veterans benefits be filed on standardized VA forms, ending VA's prior practice of allowing informal claims for benefits. *Standard Claims and Appeals Forms*, 79 Fed. Reg. 57,660 (Sept. 25, 2014). The post-2014 version of § 3.155 governs how a VA claimant files a claim for disability benefits in compliance with that requirement. Subsection (b) provides that, if a claimant shows an intent to file a claim, VA will forward the appropriate standard application form and, if the completed form is received within 1 year, VA will consider the claim to have been filed as of the date the initial intent was shown. Paragraph (d)(2) defines the scope of a claim as follows:

> Once VA receives a complete claim, VA will adjudicate as part of the claim entitlement to any ancillary benefits that arise as a result of the adjudication decision (e.g., . . . entitlement to [SMC] under [38 C.F.R. § 3.350] . . . ). The claimant may, but need not, assert entitlement to ancillary benefits at the time the complete claim is filed. VA will also consider all lay and medical evidence of record in order to adjudicate entitlement to benefits for the claimed condition as well as entitlement to any additional benefits for complications of the claimed

condition . . . . VA's decision on an issue within a claim implies that VA has determined that evidence of record does not support entitlement for any other issues that are reasonably within the scope of the issues addressed in that decision. VA's decision that addresses all outstanding issues enumerated in the complete claim implies that VA has determined evidence of record does not support entitlement for any other issues that are reasonably within the scope of the issues enumerated in the complete claim.

38 C.F.R. § 3.155(d)(2). Similar to the question of statutory interpretation discussed above, if the plain meaning of § 3.155 is clear from the text, that meaning controls and that is "'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Gardner*, 513 U.S. at 120).

The Court concludes that the plain text of § 3.155(d)(2) clearly and unambiguously does not require that a claimant file a formal claim to assert entitlement to ancillary benefits, including entitlement to SMC(k). *See id.*; Appellant's Supp. Br. at 3-4. The plain text of the regulation explicitly provides, and the Secretary appears to concede, that VA should continue to adjudicate entitlement to ancillary benefits, such as SMC(k) "as part of" the underlying claim and the claimant "may, but need not, assert entitlement to ancillary benefits." 38 C.F.R. § 3.155(d)(2); *see* Secretary's Br. at 18; Secretary's Supp. Br. at 5 ("The amendment to . . . § 3.155(d) did not change the requirement to consider ancillary benefits such as SMC."); *see also* 79 Fed. Reg. at 57,672 (explaining that the amendment to § 3.155 "does not alter VA's general practice of identifying and adjudicating issues and claims that logically relate to and arise in connection with a claim pending before VA," including entitlement to ancillary benefits, and that this is consistent with § 3.103(a) and VA's duty to develop a claim to its optimum). Indeed, the crux of the Secretary's argument on appeal is that the Board did not have jurisdiction to address SMC(k) because the disability claims on appeal were not for ED or a genitourinary disability under 38 C.F.R. § 4.115b and did not immediately cause the appellant's loss of use of a creative organ. Having rejected those arguments, the Court further concludes that the Board erred when it interpreted the post-2014 version of § 3.155 to require that the appellant file a formal claim for entitlement to SMC(k) as an ancillary benefit to his service-connected upper extremity claims.

In sum, because the plain text of § 3.155(d)(2) does not require that a claimant file a formal claim to assert entitlement to SMC(k) and, as previously discussed, the plain text of section 1114 does not preclude the appellant's causal theory of entitlement to SMC(k) as a potentially ancillary benefit to his service-connected upper extremity claims, the Board erred when it declined to adjudicate the explicitly raised issue of entitlement to SMC(k). *See Robinson*, 21 Vet.App. at 553.

Accordingly, the Court will reverse the portion of the Board's decision that implicitly found that it lacked jurisdiction over the issue of entitlement to SMC(k) and remand the matter for the Board to adjudicate it in the first instance. *See Meakin v. West*, 11 Vet.App. 183, 187 (1998) (reversing, on de novo review, a Board determination that it lacked jurisdiction); *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("[W]here the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy."); *Turco v. Brown*, 9 Vet.App. 222, 224 (1996) (explaining that whether the appellant is entitled to special monthly benefits is a factual finding).

On remand, the appellant is free to submit additional evidence and argument on the remanded matter, including the specific arguments raised here on appeal, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to the benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and the Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112.

B. The Board's Jurisdiction to Adjudicate Entitlement to TDIU Prior to March 4, 2005

The appellant argues that the Board erred when it determined that it lacked jurisdiction over entitlement to TDIU prior to March 4, 2005, in violation of *Rice v. Shinseki*, 22 Vet.App. 447 (2009) (per curiam), and contends that the evidence supports such entitlement. Appellant's Br. at 9-11 (citing R. at 122-25); Reply Br. at 6. The Secretary maintains that the Board properly determined that the issue was not before it because VA bifurcated the issue in the April 2005 rating decision, which the appellant did not appeal. Secretary's Br. at 14-17.

In the decision on appeal, the Board determined that the issue of entitlement to TDIU prior to March 4, 2005, was not before it because the appellant had not "filed the necessary forms to initiate a formal claim." R. at 37; *see* R. at 5-6.[7] Whether the Board properly bifurcated an issue is

---

[7] The Court notes that the Board mischaracterized the appellant's request for TDIU prior to March 2005 as a "claim[] for an effective date earlier than March 4, 2005." R. at 5; *see* R. at 37. In *Rudd v. Nicholson*, the Court clarified that there may be no freestanding claims for an earlier effective date. 20 Vet.App. 296, 300 (2006) (dismissing the appeal, in part, because the appellant may not file a freestanding claim for an earlier effective date in an attempt to overcome the finality of an RO decision that assigned the original effective date; rather, only a challenge based on clear and unmistakable error in the final decision is the appropriate mechanism). However, the Board's error is harmless because, as discussed below, the issue of entitlement to TDIU was part and parcel of the appellant's appeal

a question of law impacting its jurisdiction that this Court reviews de novo. *Harper v. Wilkie*, 30 Vet.App. 356, 359 (2018). Relevant to determining whether the issue of TDIU was before the Board, the Court in *Rice* explained that "a request for TDIU . . . is not a separate claim" and that, "[w]hen entitlement to TDIU is raised during the adjudicatory process of the underlying disability or during the administrative appeal of the initial rating assigned for that disability, it is part of the claim for benefits for the underlying disability." 22 Vet.App. at 453-54. The Court concluded that, because the veteran submitted evidence of unemployability when he appealed the initial disability rating assigned for his mental condition and claimed he was unemployable as a result of that condition, "the determination of whether he [was] entitled to TDIU, including the effective date for that award, [was] part and parcel of the determination of the initial rating for that disability." *Id.* at 454-55.

The Secretary's argument—that the April 2005 RO decision served to bifurcate the issue of TDIU from the appellant's claim for benefits for the upper extremity disabilities, thereby removing it from appellate status and requiring the appellant to file an NOD as to that decision— is controlled by the Court's recent decision in *Harper*. In *Harper*, the Court held that, where the issue of TDIU was part and parcel of the appellant's appeal for a higher initial disability rating for his underlying mental condition, the award of TDIU for a portion of the appeal period "'did not serve to bifurcate the appeal, but instead served simply to partially grant [Mr. Harper's] request for TDIU.'" 30 Vet.App. at 360-61 (quoting *Palmatier v. McDonald*, 626 F. App'x 991, 995 (Fed. Cir. 2015)). The Court reasoned that the appellant's "NOD placed the issue of the appropriate disability evaluation into appellate status and, therefore, because he was not awarded the highest rating possible, including TDIU, for the entire appeal period, the issue of entitlement to TDIU [prior to the effective date of the partial grant] remained on appeal." *Id.* at 362. Similarly, in this case, the RO's award of TDIU effective from March 2005 served as a partial grant of benefits and did not bifurcate the issue of TDIU from the appeal of the initial disability rating for the upper extremity disabilities. Thus, consistent with *Harper*, here, the Board had jurisdiction to consider the issue of TDIU prior to March 2005, which remained in appellate status.

Because briefing in this matter preceded the Court's December 2018 *Harper* decision, at oral argument, the Court asked the Secretary's counsel to clarify whether *Harper* changed the

---

for higher initial disability ratings for the upper extremities, which has been pending by virtue of his July 1993 Notice of Disagreement (NOD). *See* R. at 16642.

Secretary's position regarding the Board's jurisdiction over the matter of entitlement to TDIU prior to March 4, 2005. Oral Argument at 51:19-53:14. Counsel maintained that *Harper* did not control the facts of this case, asserting that the procedural posture of the TDIU matter was distinguishable from that in *Harper*. *Id.* Specifically, counsel argued that, here, the partial grant of TDIU occurred *before* the Board adjudicated the first appeal of the underlying claims; whereas, in *Harper*, the partial grant of TDIU occurred *after* the Board adjudicated the underlying claims. *Id.* The Court is not persuaded that the Secretary's distinction makes any meaningful difference. Pursuant to *Harper*, once the issue of the appropriate initial disability ratings for the appellant's upper extremity disabilities was in appellate status *by virtue of the July 1993 NOD*, R. at 16642, the issue of TDIU became part and parcel of the underlying upper extremity claims when he filed an application for TDIU in March 2005, *see Harper*, 30 Vet.App. at 359.[8]

For these reasons, the Court will reverse the portion of the Board's decision that implicitly found that, because the appellant did not file a formal claim for entitlement to TDIU for the period prior to March 4, 2005, it lacked jurisdiction over that issue, and remand the matter for the Board to adjudicate in the first instance. *See Meakin*, 11 Vet.App. at 187; *see also Tucker*, 11 Vet.App. at 374. As with the matter of entitlement to SMC(k), on remand, the appellant may submit additional evidence and argument on the remanded TDIU matter, including the specific arguments raised here on appeal, and the Board must consider any such relevant evidence and argument. *See Kay*, 16 Vet.App. at 534; *Kutscherousky*, 12 Vet.App. at 372-73; *see also Fletcher*, 1 Vet.App. at 397.

### C. Upper Extremity Disabilities

#### 1. Duty to Assist: Reexaminations

The appellant argues that the Board erred in finding the May 27, 2015, VA examination adequate to assess his right hand disability because he has developed muscle wasting in his hand since his last examination on that date. Appellant's Br. at 13 (citing R. at 115); Reply Br. at 13-14. He asserts that a more contemporaneous examination is therefore warranted. Appellant's Br. at 12-13. The Secretary counters that the appellant's mere citation to his counsel's April 2017

---

[8] Because it is not in the interests of judicial efficiency or fairness to the opposing party, the Court will not exercise its discretion to entertain the Secretary's argument—raised for the first time at oral argument—that the appellant waived the issue of entitlement to TDIU prior to March 2005 because he did not raise the TDIU challenge to the Board or this Court between 2012 and 2016, despite opportunities to do so with counsel. Oral Argument at 51:19-53:14. *See Norvell v. Peake*, 22 Vet.App. 194, 201 (2008) (explaining that this Court has "repeatedly discouraged parties from raising arguments that were not presented in an initial brief to the Court").

argument to support the assertion of a material change in his disability is insufficient to trigger VA's duty to obtain another examination or demonstrate error in the Board's decision. Secretary's Br. at 26-28.

In the decision on appeal, the Board found the duty to assist satisfied in part because an additional VA examination to evaluate alleged worsening of the appellant's muscle atrophy was not warranted. R. at 8. The Board explained that (1) the service-connected upper extremity disabilities were not accompanied by any separate and distinct muscular injury; (2) the evidence gathered in the last 25 years was adequate to evaluate the disabilities on appeal; (3) the current disability ratings assigned contemplate the appellant's reported muscle atrophy; and (4) the objective evidence regarding the nature and etiology of the reported symptoms was more probative than the appellant's assertions. *Id.*

To satisfy the duty to assist, VA may, under certain circumstances, be required to obtain a thorough and contemporaneous medical examination to determine the current severity of a claimant's disability. *See Caffrey v. Brown*, 6 Vet.App. 377, 381 (1994); *see also* 38 U.S.C. § 5103A(d). Where the current level of disability is at issue in an appeal and VA has already obtained such an examination, the duty to assist may require VA to provide an additional examination—a reexamination—if the prior examination no longer reflects the current state of the condition. *See id.*; *see also* 38 C.F.R. § 3.327 (2019). To trigger VA's duty to provide a reexamination, "the [appellant] must come forward with at least some evidence that there has in fact been a material change in his or her disability" since the prior examination. *Glover v. West*, 185 F.3d 1328, 1333 (Fed. Cir. 1999); *see* 38 C.F.R. § 3.327(a) ("Generally, reexaminations will be required if . . . evidence indicates there has been a material change in a disability or that the current rating may be incorrect."); *see also Caffrey*, 6 Vet.App. at 381 (finding that the Board in 1990 erred in finding a 1988 examination sufficiently contemporaneous to inform its decision because the appellant presented postexamination evidence suggesting that his condition had worsened). Neither a "bald, unsubstantiated claim for an increase in disability rating," *Glover*, 185 F.3d at 1333, nor the "mere passage of time" is sufficient evidence of a material change to trigger VA's duty, *Palczewski v. Nicholson*, 21 Vet.App. 174, 182 (2007) (finding that the Board in 2004 did not err in finding a 1999 examination sufficiently contemporaneous to inform its decision because the appellant had not submitted any additional evidence showing a change in his condition, nor had he alleged that his condition had worsened).

The Board's determination of whether the Secretary has fulfilled his duty to assist generally is a finding of fact that the Court reviews under the "clearly erroneous" standard of review. *Van Valkenburg v. Shinseki*, 23 Vet.App. 113, 120 (2009). As with any material issue of fact or law, the Board must provide a statement of the reasons or bases for its determination "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

The Court agrees with the Secretary that the appellant's assertion—that, contrary to the May 2015 examination, he has muscle wasting—is insufficient to demonstrate clear error in the Board's determination that a reexamination was not warranted. *See* Secretary's Br. at 26-28. The Board considered the appellant's argument and, as noted above, provided several reasons why the duty to assist did not require VA to afford a reexamination. R. at 8. Although the appellant may disagree with the Board's conclusion, he has not argued that his assertion is sufficient to demonstrate that his right hand disability symptoms materially changed as a result of muscle wasting. *See Glover*, 185 F.3d at 1333; *Palczewski*, 21 Vet.App. at 182; *Caffrey*, 6 Vet.App. at 381; Appellant's Br. at 13 (citing R. at 115); Reply Br. at 13-14. In that regard, the Court further notes that, although he generally alleges that the evidence is not sufficient to assess the severity of his disabilities, he does not challenge the Board's finding that the current disability ratings assigned contemplate his reported muscle atrophy, nor does he explain, in light of that finding, how he may be entitled to a higher disability rating due to the alleged muscle wasting. Thus, he has not demonstrated that the Board clearly erred in not remanding for a reexamination or that the Board's statement of reasons or bases is inadequate. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table); *Berger v. Brown*, 10 Vet.App. 166, 169 (1997) (holding that, on appeal to this Court, the appellant "always bears the burden of persuasion").

### 2. Entitlement to a Higher Schedular Disability Rating due to Alleged Functional Loss of the Lower Extremities

The appellant argues that the Board erred by failing to address an explicitly raised theory of entitlement: Whether his service-connected upper extremity disabilities resulted in the functional loss of his lower extremities to warrant a separate compensable rating. Appellant's Br. at 16 (citing R. at 119-20); *see* Appellant's Supp. Br. at 15-20. He contends that his upper extremity disorders cause painful arm motion when walking in cold weather and that, therefore, his upper

extremity disabilities "must be rated as if [they] were caused by abnormalities of the lower extremities themselves." Appellant's Br. at 16-17 (citing *Mitchell v. Shinseki*, 25 Vet.App. 32, 37 (2011); 38 C.F.R. § 4.45(f) (2019)); Reply Br. at 10-11.[9] The Secretary counters that, because the appellant has not filed a formal claim for the lower extremities, "the issue of a rating by analogy under the joint disability [DCs] for [his] lower extremities was not before the Board." Secretary's Br. at 20; *see* Secretary's Supp. Br. at 15-16. In his reply brief, the appellant clarifies that he does not seek disability compensation for lower extremities, but that he "seeks to be appropriately compensated for symptoms of his *upper* extremities." Reply Br. at 10-11.

Although the Board did not address this explicitly raised theory of entitlement, the appellant has not demonstrated that any error is prejudicial. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error). To support his argument, he cites to the Court's decision in *Mitchell*, which held that, when evaluating musculoskeletal disabilities, pain that affects some aspect of the normal working movements of the body may constitute functional loss that is compensable for VA benefits purposes. 25 Vet.App. at 37; *see* 38 C.F.R. §§ 4.40, 4.45 (2019). However, he does not explain how *Mitchell* applies here, where his upper extremity disabilities are rated as diseases of the peripheral nerves and not as musculoskeletal disabilities, *see* R. at 1-39; 38 C.F.R. § 4.124a, DCs 8512, 8515, and the alleged functional loss is experienced in the lower extremities, which are not service connected. Nor does he contend that *Mitchell* should be extended to include these circumstances. Also, to the extent that he is seeking additional compensation for *arm pain* caused by walking, he has not argued or pointed to authorities suggesting that rating his arm condition under other DCs would not violate VA's prohibition against pyramiding. *See Esteban v. Brown*,

---

[9] To the extent that the appellant argues, in the alternative, that remand may be warranted for the Board to determine whether he submitted an informal claim for benefits for his bilateral lower extremities at a November 2012 decision review officer hearing, the Court need not address that argument. *See* Appellant's Supp. Br. at 16-20. Rather, the appellant is free to pursue any such claim at the RO and, if the benefit is granted, argue that an effective date from November 2012 is warranted. *See DiCarlo v. Nicholson*, 20 Vet.App. 52, 56 (2006) ("[T]he appropriate procedure for a claimant to press a claim believed to be unadjudicated (and for which there is no final decision that arguably failed to consider the claim) is to pursue a resolution of the original claim, e.g., seek issuance of a final RO decision with proper notification of appellate rights and initiate an NOD." (citing 38 U.S.C. §§ 5104, 7105)), *aff'd*, *Dicarlo v. Peake*, 208 F. App'x 988 (Fed. Cir. 2008) (per curiam); *see also Ingram v. Nicholson*, 21 Vet.App. 232, 243 (2007) (per curiam) (holding that, as part of an appeal of an effective-date decision, "an appellant can raise the fact that he or she filed the original claim for the same disability at an earlier date than the claim which was subsequently granted").

6 Vet.App. 259, 262 (1994); 38 C.F.R. § 4.14 (2019); *see also* 38 C.F.R. § 4.124a, DC 8515 (contemplating "pain with trophic disturbances").

Therefore, the Board's decision that denied entitlement to increased initial disability ratings for the upper extremity disabilities on a schedular basis will be affirmed. *See* 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409.

### 3. Extraschedular Consideration

The appellant argues that the Board provided an inadequate statement of reasons or bases for declining to award an extraschedular rating based on his assertion that his upper extremity disabilities caused his obesity. Appellant's Br. at 13-16; Reply Br. at 11-13. Specifically, he asserts that the Board relied on its own impermissible medical determination to find that his service-connected disabilities did not cause obesity. Appellant's Br. at 13-16 (citing *Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991), *overruled on other grounds by Hodge*, 155 F.3d at 1356-64); Reply Br. at 11-13. The Secretary disputes these arguments and further contends that the appellant fails to demonstrate prejudicial error. Secretary's Br. at 21-26.

The VA rating schedule is based, "as far as practicable, upon the average impairments of earning capacity." 38 C.F.R. § 3.321(b)(1) (2019).[10] In exceptional cases, the rating schedule may be found inadequate to compensate a claimant's unique set of symptoms and an extraschedular rating may be approved by the Director of the Compensation Service (Director). *Id.*

"The determination of whether a claimant is entitled to an extraschedular rating . . . is a three-step inquiry." *Thun v. Peake*, 22 Vet.App. 111, 115 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009); *see Anderson v. Shinseki*, 22 Vet.App. 423, 427 (2009) (clarifying that the three "steps" identified in *Thun* are necessary "elements" of an extraschedular rating analysis). The first step in the inquiry is to determine whether "the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate." *Thun*, 22 Vet.App. at 115. "[I]nitially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Id.* If the adjudicator determines that the available schedular ratings are inadequate, the

---

[10] The Court notes that, effective February 19, 2019, VA made minor changes to § 3.321 to comply with the appeals processing changes mandated by VAIMA, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). *See* 84 Fed. Reg. at 170; 84 Fed. Reg. at 2449.

second step of the inquiry requires the adjudicator to "determine whether the claimant's exceptional disability picture exhibits other related factors," such as marked interference with employment or frequent periods of hospitalization. *Id.* at 116. Then, if the first two steps have been satisfied, the adjudicator must refer the claim to the Director for a determination of whether an extraschedular rating is warranted. *Id.*

The Board reviews the Director's extraschedular decision de novo and, as with any material issue of fact or law, the Board must provide an adequate statement of reasons or bases for its determination. *See Kuppamala v. McDonald*, 27 Vet.App. 447, 457 (2015); *Allday*, 7 Vet.App. at 527. Here, the Board determined that an extraschedular rating was not warranted based on its finding that *Thun* steps 1 and 2 were not met. R. at 30-36. The Board also found that the collective impact of the appellant's obesity, exacerbation of cardiovascular symptoms, and other manifestations of his service-connected upper extremity disabilities did not collectively show that an extraschedular rating was warranted. R. at 33-35.

As an initial matter, the Court notes that the possibility of entitlement to an extraschedular disability rating on a collective basis has been eliminated by the 2017 amendment to 38 C.F.R. § 3.321(b)(1), which the Court in *Thurlow v. Wilkie* found does not have an impermissible retroactive effect. 30 Vet.App. 231, 239-40 (2018). Accordingly, the revised amendment applies, and any error by the Board in this case in assessing entitlement to an extraschedular rating on a collective basis is harmless, as that benefit is "no longer supported in law." *Id.*; *see* 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409.

To the extent that the appellant seeks an extraschedular rating for his service-connected upper extremities alone, and assuming that the bilateral upper extremity disabilities may be considered a "single service-connected disability," 38 C.F.R. § 3.321(b)(1), the Court concludes that he fails to demonstrate prejudicial error. In this regard, the appellant relies on a VA General Counsel Precedent Opinion, which held that, if "obesity resulting from a service-connected disease or injury is found to produce impairment beyond that contemplated by the applicable provisions of VA's rating schedule, VA may consider an extra[]schedular rating . . . for the service-connected condition," VA Gen. Coun. Prec. 1-2017 at 1 (Jan. 6, 2017), and argues that the Board impermissibly relied on its own medical determination to find that his upper extremity disabilities did not cause his obesity, Appellant's Br. at 13-14. However, even assuming that the Board erred in this respect, as the Secretary points out, the appellant does not raise any arguments challenging

the Board's finding that the evidence failed to establish that *Thun* step 2 was met, nor does he respond to the Secretary's assertion in his reply brief. *See Yancy v. McDonald*, 27 Vet.App. 484, 494-95 (2016) ("[A]n error with respect to one [*Thun*] element does not necessarily affect the Board's analysis of the other element. If either element is not met, then referral for extraschedular consideration is not appropriate."); Secretary's Br. at 21-23; Appellant's Br. at 13-16; Reply Br. at 11-13.[11] Accordingly, he has not met his burden of demonstrating prejudicial error. *See* 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409.

### III. CONCLUSION

The appeal of the Board's September 26, 2017, decision declining to exercise jurisdiction over the matter of entitlement to TDIU after August 31, 2011, and a new claim for entitlement to disability compensation for ED as secondary to the appellant's service-connected disabilities is DISMISSED. After consideration of the parties' pleadings and a review of the record, the portions of the Board's decision implicitly determining that it lacked jurisdiction over the matters of entitlement to SMC(k) and to TDIU prior to March 4, 2005, are REVERSED and the matters are REMANDED for further proceedings consistent with this decision. The portion of the Board's decision denying entitlement to increased initial disability ratings for the upper extremities is AFFIRMED.

---

[11] Because the appellant fails to assert error in the Board's *Thun* step 2 analysis, the Court need not address his additional argument that remand is warranted for the Board to obtain a medical examination evaluating the relationship between his obesity and upper extremity disabilities. *See* Appellant's Br. at 15.